**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EISAI INC., | : | Civil Action No.: 08-4168 (MLC) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | MEMORANDUM OPINION |
| | : | AND ORDER |
| SANOFI-AVENTIS U.S., LLC, et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**ARPERT, U.S.M.J**

     This matter having come before the Court on the informal application of Plaintiff Eisai Inc. ("Plaintiff" or "Eisai"), by letter to Defendants Sanofi-Aventis U.S., LLC and Sanofi-Aventis, U.S., Inc. (collectively, "Defendants") dated March 29, 2011, to compel the production of prior investigations, lawsuits and other proceedings (collectively, "prior proceedings") involving the sales, marketing, contracting, distribution and/or promotion of Lovenox. Defendants submitted opposition by way of a responsive letter to Plaintiff dated April 28, 2011. Plaintiff submitted a reply by way of a letter to Defendants dated May 7, 2011. In relation to this application, Plaintiff also submitted a letter dated May 31, 2011 and therein alerted the Court to a recently published Senate Finance Committee report regarding Defendants' strategic use of third parties to influence the Food and Drug Administration ("FDA"). Defendants submitted a response in a letter dated June 3, 2011. The Court conducted oral argument on October 19, 2011. For the reasons stated on the record and herein, Plaintiff's application to compel the production of prior proceedings is **DENIED**.

     In sum, Plaintiff has marketed "Fragmin, a type of injectable anticoagulant drug", in the United States since 1996. *See* Pl.'s Compl., dkt. entry no. 1 at 2. Defendants market a

competitor "anticoagulant product known as Lovenox".  *Id*.  On August 18, 2008, Plaintiff filed a Complaint alleging "monopolization of all relevant markets" pursuant to 15 U.S.C. § 2 (*see* Pl.'s Compl. at 21), "attempted monopolization of all relevant markets" pursuant to 15 U.S.C. § 2 (*Id*. at 22), "sale on condition not to use goods of competitor and to force use of full line of Lovenox goods in all relevant markets" pursuant to 15 U.S.C. § 14 (*Id*. at 23), "agreements in restraint of trade in all relevant markets" pursuant to 15 U.S.C. § 1 (*Id*. at 23-24), and violation of the "New Jersey Antitrust Act" pursuant to *N.J.S.A.* §§ 56:9-3 and 56:9-4 (*Id*. at 24-25), based upon Plaintiff's contention that Defendants designed "contractual practices...to preserve...[their] substantial and enduring monopoly in the market for injectable anticoagulant drugs" as Plaintiff contends that Defendants account "for in excess of 90% of all sales for these drugs" (*Id*. at 1-2). More specifically, Plaintiff alleges that Defendants have "expanded, protected, and maintained [their] monopoly power unlawfully, through a variety of anticompetitive means, including exclusionary contracts that draw upon and further protect the monopoly position of Lovenox". *Id*. at 2.  Plaintiff asserts that "Lovenox contractual provisions require that a hospital customer purchase at least 90% of its relevant injectable anticoagulant purchases from Defendants...[in order] to avoid losing a discount of up to 30% off the customer's total Lovenox purchases", a provision Plaintiff refers to as "the monopoly-share contractual condition".  *Id*.  "Once a hospital's purchases fall below 90%, it forfeits significant discounts" and, if "the customer purchases less than 75% of its requirements from Defendants, the customer receives only a 1% discount".  *Id*.  Plaintiff maintains that Defendants do "not offer the Lovenox discount without the monopoly-share contractual condition".  *Id*.  As a result, Plaintiff alleges that the "monopoly-share condition causes anticompetitive effects in at least two ways".  *Id*. at 3.  "First, [the monopoly-share condition] operates as a *de facto* one-way exclusive dealing arrangement" such

that "[i]n order to obtain the discount, a hospital must effectively agree to take at least 90% of its requirements from Defendants" and thereby "effectively [places] a...10% [cap] on Defendants' anticoagulant competitors' combined sales to hospitals". *Id*. Thus, Plaintiff contends that Defendants' practices "blockad[e] entry by any firm not already in the market by assuring that after entry no new entrant [can] compete for more than 10% of market sales", "forestall effective competition from Plaintiff...by imposing barriers to Plaintiff's expansion of its market share...[and] thereby disabling Plaintiff from obtaining the same reputational advantages and economies of scale in manufacturing, marketing, and distribution that Defendants enjoy", and "deny consumers unrestricted choice of products, suppress improvements in patient care, reduce innovation, and prohibit lower prices". *Id*. at 4. "Second, the monopoly-share condition restricts Plaintiff's ability to obtain formulary status at hospitals...by erecting a substantial barrier to inclusion in hospitals' formularies". *Id*. Plaintiff maintains that "Lovenox already enjoys a 90% market share and is the predominant drug on most hospital formularies" such that "replacing Lovenox with a new anticoagulant drug within that formulary is costly and time consuming for any hospital" and, "although Fragmin and Lovenox are both approved for a variety of uses, Lovenox has obtained a comparative stronghold with respect to certain uses". *Id*. Thus, Plaintiff contends that Defendants' "monopoly-share condition operates so that a hospital that wishes to purchase anticoagulant drug products at the lowest price has no effective alternative other than to purchase at least 90% of its product needs from Defendants" and therefore "excludes rival anticoagulant sellers from hospitals". *Id*. at 4-5.

With this informal application, Plaintiff specifies the prior proceedings relating to Defendants' marketing and contracting practices that it has requested pursuant to the Court's March 24, 2011 Order ("Order") (*see* dkt. entry no. 141) and requests that the Court compel

production.   Plaintiff maintains that "already completed discovery from [these] [prior] proceedings is fertile ground for admissible evidence that could support [Plaintiff's] antitrust claims here...and...could [be] produce[d]...quickly and easily" by Defendants.  *See* Pl.'s Letter dated March 29, 2011 at 1.  Plaintiff cites FED. R. CIV. P. 26(b), *Am. Health Sys., Inc. v. Liberty Health Sys.*, 1991 WL 30726, at *2 (E.D. Pa. 1991), *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978), and *Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 217 (D. Del. 1985) for the general proposition that Courts may allow "broad discovery in antitrust actions", that "discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action", and that "in cases where allegations of conspiracy or monopolization are involved, broad discovery may be needed to uncover evidence of invidious design, pattern or intent".  *Id.* at 1-2.

With respect to Plaintiff's Document Request No. 16, Plaintiff seeks "[a]ll documents that relate or pertain to the 2003 Lawsuit [brought by Organon Sanofi-Synthelabo LLC ("OSS") against Aventis Pharmaceuticals, Inc. ("Aventis") alleging the Lovenox discount program was anticompetitive]..." ("2003 OSS Litigation").  *Id.* at 2.  Plaintiff argues that this request "seeks highly relevant documents...which are certainly discoverable" given that, pursuant to *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, at *12-13 (E.D. Pa. 2004), "defendants are routinely ordered to produce records of prior government investigations related to the product at issue".  *Id.* at 2-3.  Plaintiff maintains that the "details of the 2003 [OSS Litigation]...reinforce its discoverability", where "OSS asserted antitrust claims against [Aventis] under the Sherman Act, Clayton Act and Florida antitrust laws" related to Aventis' alleged "condition[ing] [of] customers' discounts and/or rebates on their agreements to purchase monopoly-share levels of Lovenox".  *Id.* at 3.  Plaintiff contends that the "current action bears a striking similarity to the

2003 [OSS Litigation]" because "[l]ike OSS, [Plaintiff] also alleges that [Defendants'] contracts, which condition Lovenox discounts upon customers' agreements to purchase monopoly-share levels of Lovenox, penalize customers who do not purchase at least 90 percent of their products in the relevant market from [Defendants]...". *Id*. Plaintiff claims that "in its October 2008 motion to dismiss" this case, Defendants "pointed out that [Plaintiff's] lawsuit is challenging a contracting practice that 'Sanofi' has employed for the past ten years or longer and the same discounting practices that were the subject of the lawsuit against Aventis in 2003". *Id*. "[Defendants'] own contracts explicitly define the market to include Lovenox, Arixtra[,] and...Fragmin" and, therefore, "both cases make antitrust claims against the monopoly-share requirements in Aventis's and [Defendants'] respective Lovenox contracts". *Id*. Citing *In re Wirebound Boxes Antitrust Litig.*, 126 F.R.D. 554, 556 (D. Minn. 1989) and *Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 59 (E.D. Pa. 1980), Plaintiff maintains that "OSS's investigation, authorization and good-faith basis for filing its antitrust action are...relevant and...discoverable" because "[t]he document productions and transcripts of any depositions likely contain information directly relevant to [Plaintiff's] claims" and "re-producing [such discovery]...cannot possibly burden [Defendants] [given that they have] already been collected and produced at least once before". *Id*. Finally, citing *Wyeth v. Orgenus Pharm. Inc.*, No. 09-3235 (D.N.J. 2010), *Josephs v. Harris Corp.*, 677 F.2d 985, 922 (3d Cir. 1982), and *Cipollone v. Liggett Group., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986), Plaintiff argues that the "[t]he documents generated by the settlement of the lawsuit between and merger of two former competitors are also discoverable" because "the merger may have created an even more dominant market actor...which only exacerbates the anticompetitive conduct that was challenged in the first lawsuit". *Id*. at 4.

With respect to Plaintiff's Document Request No. 17, Plaintiff seeks "[a]ll documents that relate or pertain to the assignment, transfer or 'contribution'...of any contracts for the sale of Lovenox from Aventis to [Defendants]".  *Id*.  Citing *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 217-18 (3d Cir. 2008), Plaintiff maintains that these documents are relevant and discoverable for the same reasons set forth above related to ths 2003 OSS Litigation "not only as to [Plaintiff's] affirmative claims but also [as] to [Defendants'] assertion of the statute of limitations" in order "to prove that [Defendants] continued the contracting strategy that Aventis had developed and OSS had sued Aventis for implementing".  *Id*.  With respect to Plaintiff's Document Request No. 18, Plaintiff seeks "[a]ll documents relating to...the acquisition [by] 'Sanofi-Synthelabo S.A.' of the stock of Aventis, the merger of the latter into 'Sanofi-Aventis S.A.', and the assignment of contracts and assets from Aventis to [Defendants]".  *Id*. Citing *In re Sanofi-Synthelabo, S.A. and Aventis, S.A.*, Dkt. No. C-4112 (FTC 2004) and *U.S. v. First Nat. Bank & Trust Co. of Lexington*, 376 U.S. 665, 672-73 (1964) and noting that "'sanofi-aventis's' very existence in its current form is the result of a corporate merger between former adversaries in an antitrust lawsuit over the marketing of Lovenox", Plaintiff argues that "[u]nless sanofi-aventis concedes in this litigation that it had no legitimate business purpose for the acquisition and merger – and its only purpose was to perpetuate the monopoly over which OSS sued Aventis – [Plaintiff] is entitled to [the requested] discovery".  *Id*. at 4-5.

With respect to Plaintiff's Document Request Nos. 19-20, Plaintiff seeks "[a]ll communications with GlaxoSmithkline ("GSK") regarding the divestiture of Arixtra, LTC Products and/or the market for LTC Products" and "[a]ll documents that relate to...the reasons why Arixtra was sold to GSK".  *Id*. at 5.  Citing *Am. Health Sys., Inc. v. Liberty Health Sys.*, 1991 WL 30726, at *2 (E.D. Pa. 1991) and *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340

(1978), Plaintiff notes that the Federal Trade Commission ("FTC") initiated formal proceedings concerning the anticompetitive effects of the merger" and "'sanofi-aventis'...[subsequently] entered into a consent order that...required the divestiture of Arixtra" such that "[Plaintiff] is entitled to discovery of...the analyses and/or disclosures...that 'sanofi-aventis' made to GSK in connection with the divestiture of Arixtra" including "statements to GSK regarding the condition of the market for Arixtra" and "whatever [sanofi-aventis] told GSK of its recent allegations that the Lovenox contract rendered the market impenetrable for Arixtra".  *Id*.  Citing *Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 217 (D. Del. 1985), Plaintiff claims that "[t]his discovery could lead...to admissible evidence that...OSS and Aventis decided to retain Lovenox and divest Arixtra because of Lovenox's dominant market position and the impossibility of Arixtra (or any other competitor) making any market inroads against a monopolist whose contracts set their market-share discount at 90 percent".  *Id*. at 5-6.

With respect to Plaintiff's Document Request Nos. 57-58, Plaintiff seeks "[a]ll communications from any state or federal law enforcement, regulatory, administrative or other governmental or quasi-governmental entity", and "[a]ll documents produced by 'sanofi-aventis'" to same, "pertaining to any investigation, inquiry or proceeding involving the sales, marketing, contracting, distribution and/or promotion of Lovenox".  *Id*. at 6.  With respect to Plaintiff's Document Request No. 59, Plaintiff seeks "[a]ll documents produced by 'sanofi-aventis' in any civil litigation or administrative proceeding involving allegations of anticompetitive sales, marketing or contracting practices and/or antitrust violations in regards to Lovenox" and asks that Defendants "identify all proceedings that potentially touch on Lovenox...[together with an explanation] of the proceedings".  *Id*.  Plaintiff notes that it "seeks only the discovery that has already been produced in another proceeding...and only in the matters pertaining to the sales,

7

marketing, contracting, distribution and/or promotion of Lovenox". *Id*. Citing *Wyeth v. Orgenus Pharm. Inc.*, No. 09-3235 (D.N.J. 2010), *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591 (E.D. Pa. 2004), *Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 59 (E.D. Pa. 1980), and *In re Wirebound Boxes Antitrust Litig.*, 126 F.R.D. 554, 556 (D. Minn. 1989), Plaintiff maintains that "[t]he discovery sought in these requests is reasonably calculated to lead to the discovery of admissible evidence and is therefore unobjectionable". *Id*. at 7.

With respect to Plaintiff's Document Request No. 60, Plaintiff seeks "all documents produced in response to a request for production of documents or subpoena or search warrant in any other litigation, claim, investigation or administrative proceeding" to the "extent pertaining to the sales, marketing, promotion, contracting or distribution of Lovenox" and thereafter provides an non-exclusive list of known requests and asks that Defendants "identify all proceedings that potentially touch on Lovenox...[together with an explanation] of the proceedings". *Id*. at 6-8.  However, Plaintiff has withdrawn several of its listed requests (*see* Pl.'s Letter dated May 7, 2011 at 7-10; *see also id.* at Appendix) while asserting two (2) new requests (*Id*. at 9; *see also id.* at Appendix).  Plaintiff's arguments in support of the relevance and discoverability of the information that is relevant to these requests is set forth in the Appendix to its Letter dated May 7, 2011.  *See* Pl.'s Letter dated May 7, 2011 at Appendix; *see also id.* at 7-10; Pl.'s Letter dated March 29, 2011 at 7-10.

In opposition, Defendants maintain that "the proceedings identified...[by Plaintiff] are neither relevant to nor discoverable in the instant action" and that "discovery regarding" other prior proceedings identified by Defendants is likewise "inappropriate" because they "have little, if any, similarity to...[Plaintiff's] claims" in this matter.  *See* Def.'s Opp'n Letter dated April 28,

2011 at 1.  Defendants state that "many of the [prior] proceedings do not...relate to Lovenox or relate only broadly to [Defendants'] pharmaceutical products without singling Lovenox out" and "none of the [prior proceedings] resulted in a finding of liability or wrongdoing by [Defendants]".  *Id*. at 2.  Defendants cite FED. R. CIV. P. 26(b), *MacDermid Printing Solutions, L.L.C. v. E.I. DuPont De Nemours & Co.*, 2008 WL 323764, at *1 (D.N.J. 2008), *Prof'l Recovery Servs., Inc. v. Gen. Elec. Capital Corp.*, 2009 WL 137326, at *4 (D.N.J. 2009), *Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023, at *2 (S.D.N.Y. 2002) for the proposition that although "Rule 26 may favor broad discovery, ...its parameters are not without bounds and its provisions clearly prohibit the type of impermissible fishing expeditions that [Plaintiff] attempts here".  *Id*. at 2-3.  Defendants cite *Am. Eagle Outfitters, Inc. v. Payless ShoeSource, Inc.*, 2009 WL 152712, at *1 (E.D.N.Y. 2009), *Prouty v. Nat'l R.R. Passenger Corp.*, 99 F.R.D. 545, 549 (D.D.C. 1983), and *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 139 (W.D. Okla. 1977) for the proposition that "the fact that [Plaintiff] has pleaded a monopolization claim based on the structure of specific contracts for the sale of Lovenox and certain alleged improper marketing practices directed at [Plaintiff] does not entitle [Plaintiff] to discovery into every other possible theory of liability that has been pursued by or against [Defendants] over the past thirteen years".  *Id*. at 3.  Defendants cite FED. R. CIV. P. 26(b), *Heartland Surgical Specialty Hosp., LLC v. Mid-West Div., Inc.*, 2007 WL 950282, at *3 n.5 (D. Kan. 2007), and *Eisai Co., Ltd. v. Teva Pharmas. USA, Inc.*, 2009 WL 4666937, at *3-4 (D.N.J. 2009), *appeal denied*, 2010 WL 2629062 (D.N.J. 2010) for the proposition that the 2000 amendment to Rule 26 "signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings", "signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings", and demonstrates that in a

recent case "[Plaintiff] successfully argued against similarly broad discovery of other proceedings sought to assess whether the withholding of the patent application at issue was done with similar deceptive intent". *Id*. at 3-4.  Finally, Defendants cite FED. R. CIV. P. 26(b)(2), *Eisai*, 2009 WL 4666937, at *3, and *Heartland Surgical*, 2007 WL 950282, at *16 for the proposition that "the burden on the party from which discovery is sought must be balanced against the need for the information sought", that "locating, collecting, reviewing, and producing responsive materials from...[prior] proceedings...would be a massive and costly undertaking" and would "require [Defendants'] counsel in this case to review the full panoply of discovery materials produced in [prior proceedings], ...[to] address confidentiality designations and other product redactions[,] ...to get a handle on the subject matter of the underlying documents being produced[,] ...[to] cull these prior productions to identify any third party's material contained therein[,] and to provide notice of disclosure to the third party for any documents subject to confidentiality provisions, orders, or non-disclosure agreements" and that "[t]his burden alone is sufficient reason to deny [Plaintiff's] request". *Id*. at 4-5.

    With respect to Plaintiff's Document Request No. 16, Defendants maintain that the 2003 OSS Litigation, and the settlement of that lawsuit, are "factually distinct from the instant case" because the lawsuit "was brought seven years ago by a different party that manufactured a different drug...and made allegations about different Lovenox contracts that were offered under different market conditions". *Id*. at 6.  To the extent Plaintiff asserts that Defendants "admitted that [Plaintiff's] lawsuit challenges the same discounting practices as the prior suit", Defendants maintain that this is "disingenuous and false" because Defendants "made no such admission nor [do they] believe the two cases are comparable". *Id*.  "[T]he 2003 [OSS] [L]itigation involved a recently launched anticoagulant product (Arixtra) that had...very limited approved indications at

the time" and, therefore, "its claim related to its alleged inability to break into the market as a new entrant that had indications covering only a small fraction of any hospital's anticoagulation needs" while, here, Defendants contend that "Fragmin...has been around since the 1990s and is approved for uses that cover the great majority of the potential anticoagulant market". *Id*. at 6-7. Defendants argue that "[t]hese important differences...render any attempted comparison ineffectual and of little relevance, if any, to [Plaintiff's] claims" and therefore, pursuant to *Am. Eagles Outfitters*, 2009 WL 152712, at *1 and *Rhone-Poulenc Rorer Inc. v. Aetna Cas. & Sur. Co.*, 1991 WL 183842, at *3 (E.D. Pa. 1991), this request "is not reasonably calculated to lead to the discovery of admissible evidence". *Id*. at 7. Defendants, citing *Eisai*, 2009 WL 4666937, at *4 and *Bacher v. Allstate Ins. Co.*, 211 F.3d 52, 57 (3d Cir. 2010), also argue that "proceeding with discovery concerning the [2003] OSS [L]itigation...will result in a...side-trial about the relevance of and conclusions to be drawn from a lawsuit concerning a different company's product and a different contract". *Id*. Defendants, citing FED. R. CIV. P. 26(b)(2), *Eisai*, 2009 WL 4666937, *3, and *Heartland Surgical*, 2007 WL 950282, at *16, further argue that "requests for discovery pertaining to the 2003 [OSS] [L]itigation would impose significant and unnecessary burdens" and note that they are "already collecting and producing the underlying business records and custodial files relating to the sales, marketing, and contracting practices for Lovenox covering the period 1998 to the present, which covers the contracting practices at issue during the 2003 OSS [L]itigation". *Id*. Defendants also note that they provided Plaintiff with an explanation regarding the conclusion of the [2003] OSS [L]itigation and "[c]opies of [related] court filings" and argue that, "[t]o the extent that [Plaintiff] seeks discovery beyond the...explanation and...court documents previously produced, [Plaintiff's] requests are overbroad and...[demonstrate that Plaintiff] is engaged in a...fishing expedition into matters that have no

11

relevance to the...issues presented in this case". *Id*. at 8.  Citing *Centillion Data Sys., Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 552 (S.D. Ind. 1999) and *Riddell Sports, Inc. v. Brooks*, 1995 WL 20260, at *1 (S.D.N.Y. 1995), Defendants argue that "even accepting...[Plaintiff's] flawed theories that the...creation of a new entity or termination of the prior litigation could restart the limitations period or exacerbate the anticompetitive conduct being challenged [here], the information and documents already provided are more than sufficient for [Plaintiff] to present its arguments". *Id*.

With respect to Plaintiff's Document Request Nos. 17-20, Defendants maintain that Plaintiff's request for "documents concerning the...acquisition of Aventis...and subsequent divestiture of Arixtra to GSK...are overbroad, unduly burdensome, and call for the production of documents that [Plaintiff's] own counsel previously described as not relevant to any issue in this case". *Id*. at 9.  Citing *Mass. Sch. of Law at Andover v. Am. Bar Assoc.*, 107 F.3d 1026, 1034 (3d Cir. 1997), Defendants argue that these requests "have no bearing on the claims at issue in this lawsuit" and that Plaintiff is prohibited from doing "an end run around the discovery process...by requesting documents produced to the government in an unrelated investigation into...[the] proposed acquisition of Aventis". *Id*.  Defendants note that when they "raised concerns about [a] potential conflict presented" by Plaintiff's counsel, Seth Silber, Esq. ("Silber") of Wilson Sonsini,  who "worked as the Assistant to the Bureau Director of the FTC's Bureau of Competition and was involved in the FTC's review of...[Sanofi-Synthelabo's] proposed transaction", "Mr. Silber affirmatively stated that his work at the FTC did not disqualify him from representing [Plaintiff] in this matter because the FTC's merger investigation was unrelated to the claims here asserted by [Plaintiff]". *Id*. at 9-10.  Defendants maintain that the "FTC's press release[,] which announced that the Consent Order adequately addresse[d] each of the areas

12

of concern identified by the [FTC]", and that "the Consent Order [itself][,] [which] preserve[s] competition in the markets for...[certain] pharmaceutical products", belies Plaintiff's "claim that it is entitled to documents concerning the rationale behind the acquisition" as "the facts relating to the acquisition are uncontroversial...and are largely matters of public record". *Id.* at 10. Further, Defendants argue that discovery related to Plaintiff's claim that Defendants "continued a contracting strategy that was anticompetitive" is "already covered by [Plaintiff's] other document requests" and that Defendants have "already provided or will provide sufficient information about the acquisition of Aventis" and "the assignment of any contracts for the sale of Lovenox from Aventis". *Id.* Finally, Defendants contend that Plaintiff's "demands for documents relating to the divestiture of Arixtra are...misplaced" because "'Sanofi-Synethlabo' began the process of divesting Arixtra and other assets months before the FTC stated that the divestiture would be required for the proposed acquisition to be consummated" as "[i]t is common for companies seeking approval of a merger or acquisition to divest overlapping products". *Id.* at 11. "[Plaintiff]...[improperly] imputes some purported, nebulous, invidious design into 'Sanofi-Synethlabo's' decision to use common business sense in divesting Arixtra and keeping Lovenox". *Id.*

With respect to Plaintiff's Document Request Nos. 57-59, Defendants provide a list of "additional proceedings that may potentially touch on sales, marketing and contracting practices pertaining to Lovenox" but argue that these proceedings have no relevance to the antitrust claims asserted by [Plaintiff] in this action" because they are not "relevant to [Plaintiff's] alleged claims or [Defendants'] defenses thereto...". *Id.* at 17. This list, together with Defendants' specific arguments in opposition to the production of those materials as to which Plaintiff has not withdrawn its request – based upon the information's irrelevance and the burden associated with

production – are set forth in Defendants' letter dated April 28, 2011.  *See* Def.'s Opp'n Letter dated April 28, 2011 at 17-20.

       With respect to Plaintiff's Document Request No. 60, Defendants maintain that although "[Plaintiff] provides a..list of other proceedings apparently compiled from the public disclosures contained in filings with the Securities & Exchange Commission ("SEC")", "the subject matter in each of the identified proceedings is far afield of the monopolization claims asserted by [Plaintiff] based on the Lovenox discounts offered to hospitals".  *Id*. at 11.  Although "[Plaintiff] now...claims that any lawsuit challenging Lovenox pricing, whether it is for resale under private label, Medicare reimbursement, or retail pharmacies[,] ...implicates [its] core allegations", Defendants argue that such proceedings are irrelevant to this lawsuit and that their production would be unduly burdensome.  *Id*.  Defendants' specific arguments in opposition to the production of those materials for which Plaintiff has not withdrawn its request are set forth in Defendants' letter dated April 28, 2011.  *See* Def.'s Opp'n Letter dated April 28, 2011 at 11-16.

       The Court notes that pursuant to FED. R. CIV. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter" and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence".  With respect to requests for discovery related to settlement materials, although "the Third Circuit does not recognize a settlement privilege", "[p]arties seeking to discover such communications must make a heightened, more particularized showing of relevance...and [demonstrate that the evidence is]

calculated to lead to the discovery of admissible evidence". *Ford Motor Co. v. Edgewood Props.*, 257 F.R.D. 418, 423 (D.N.J. 2009); *see also Lesal Interiors v. Resolution Trust Corp.*, 153 F.R.D. 552, 562 (D.N.J. 1994). "The Court notes...that there is a general policy of allowing liberal discovery in antitrust cases" and that, "[p]articularly where allegations of conspiracy or monopolization are involved, ...broad discovery may be needed to uncover evidence of invidious design, pattern or intent". *Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 217-18 (D. Del. 1985). "Where there is doubt over relevance...[in antitrust cases], the rule indicates that the court should be permissive" assuming the discovery is relevant to either party's claim or defense or is relevant to the subject matter involved in the action. *American Health Systems, Inc. v. Liberty Health System*, 1991 WL 30726, at *2 (E.D. Pa. 1991); *see also Morgan Smith Automotive Products, Inc. v. General Motors Corp.*, 54 F.R.D. 19 (E.D. Pa. 1971); *F.T.C. v. Lukens Steel Co.*, 444 F. Supp. 803 (D.D.C. 1977); *Maritime Cinema Service Corp. v. Movies en Route, Inc.*, 60 F.R.D. 587 (S.D.N.Y. 1973); *Leonia Amusement Corp. v. Loew's, Inc.*, 16 F.R.D. 583 (S.D.N.Y. 1954); *Quonset Real Estate Corp. v. Paramount Film Distr. Corp.*, 50 F.R.D. 240 (S.D.N.Y. 1970); *Heat and Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986); *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F. 2d 556, 556 (7th Cir. 1984). Further, the Court acknowledges that "[t]he party resisting discovery has the burden of clarifying and explaining its objections and to provide support therefor". *Tele-Radio Systems, Ltd. v. De Forest Electronics, Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981); *see also Gulf Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 916-17 (E.D. Pa. 1979); *Robinson v. Magovern*, 83 F.R.D. 79, 85 (E.D. Pa. 1979).

"However, despite this breadth, discovery is not without bounds...and courts will not permit parties to engage in fishing expeditions" because "the discovery rules are designed to assist a party to prove a claim that it reasonably believes to be viable without discovery, not to

find out if it has any basis for a claim" such that "the fact that discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request". *MacDermid Printing Solutions, L.L.C., v. E.I. du Pont de Nemours and Co.*, 2008 WL 323764, at *1 (D.N.J. 2008); *see also Unicasa Mktg. Group, LLC v. Spinelli*, 2007 WL 2363158, at 2 (D.N.J. 2007); *Claude B. Bamberger Int'l, Inc. v. Rohm and Haas Co.*, 1998 WL 684263, at *2 (D.N.J. 2008); *Professional Recovery Services, Inc. v. General Elec. Capital Corp.*, 2009 WL 137326, at *4 (D.N.J. 2009); *American Eagles Outfitters, Inc. v. Payless Shoesource, Inc.*, 2009 WL 152712, at *1 (E.D.N.Y. 2009); *Miller v. Doctor's General Hospital*, 76 F.R.D. 136, 139 (W.D. Okla. 1977).  Further, pursuant to FED. R. CIV. P. 26(b)(2)(C), "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i)   the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii)  the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

"[A] discovery request may be denied if, after assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, the District Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery".  *Takacs*, 2009 WL 3048471, at *1; *see also Bayer AG*

16

*v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). "The purpose of this rule of proportionality is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry". *Takacs*, 2009 WL 3048471, at *1 (*citing Bowers v. National Collegiate Athletic Assoc.*, 2008 WL 1757929, at *4 (D.N.J. 2008)); *see also Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989); *Public Service Group, Inc. v. Philadelphia Elec. Co.*, 130 F.R.D. 543, 551 (D.N.J. 1990).

    With respect to Plaintiff's Document Request No. 16, the Court finds that the 2003 OSS Litigation involved different parties, different contractual structures, a different anticoagulant product (Arixtra) "that had only very limited approved indications at the time", and related to Arixtra's "inability to break into the market as a new entrant". *See* Def.'s Opp'n Br. at 6-7. Given these significant differences, the Court finds that information related to the 2003 OSS Litigation is irrelevant, unlikely to lead to the discovery of admissible evidence in this matter, and that production of same would unduly burden Defendants. *See MacDermid Printing*, 2008 WL 323764, at *1; *see also Takacs*, 2009 WL 3048471, at *1. Further, with respect to Plaintiff's request for settlement materials, the Court finds that despite the fact that Plaintiff has failed to "make a heightened, more particularized showing of relevance...and [demonstrate that the evidence is] calculated to lead to the discovery of admissible evidence" (*Ford Motor*, 257 F.R.D. at 423), Defendants have provided Plaintiff with "the facts relating to the termination of the 2003 [OSS Litigation]" and "[c]opies of...court filings" related to the stipulation of dismissal (Def.'s Opp'n Br. at 8). Given Plaintiff's broad request and failure to make the requisite particularized showing, the Court finds that its decision in *Wyeth v. Orgenus Pharm. Inc.*, No. 09-3235 (D.N.J. 2010) is distinguishable and that the settlement materials requested related to the 2003 OSS

Litigation are irrelevant, unlikely to lead to the discovery of admissible evidence in this matter, and that production of same would unduly burden Defendants. *See MacDermid Printing*, 2008 WL 323764, at *1; *see also Takacs*, 2009 WL 3048471, at *1.  For these reasons, Plaintiff's application to compel production related to Document Request No. 16 is denied.  The Court notes, however, that Defendants' counsel agreed to meet and confer with Plaintiff's counsel regarding the production of prior sworn testimony related to the 2003 OSS Litigation.

With respect to Plaintiff's Document Requests Nos. 17-20, the Court finds that Plaintiff's counsel – Mr. Silber – acknowledged that the "[FTC's] examination of the 'Sanofi-Aventis' merger concerned several products and markets, including the market for Lovenox, an Aventis product", that "considerable information about the merger...and the [FTC's] approval of it is public", that "[t]he current litigation concerns specific contracting practices of 'Sanofi-Aventis' in its sales of Lovenox to hospitals", and that the conduct alleged in this lawsuit "was not examined in the [FTC's] review of the proposed 'Sanofi-Aventis' merger".  *See* Def.'s Opp'n Letter dated April 28, 2011, Ex. A at 2-3.  Defendants' represent that they have "already provided or will provide sufficient information about the acquisition of Aventis" and "the assignment of any contracts for the sale of Lovenox from Aventis" such that any "discovery...necessary to prove that [Defendants] continued a contracting strategy that was anticompetitive" is "already covered by [Plaintiff's] other document requests".  *See* Def.'s Opp'n Letter dated April 28, 2011 at 10. Further, Defendants represent that "'Sanofi-Synethelabo' began the process of divesting Arixtra and other assets months before the FTC stated that the divestiture would be required for the proposed acquisition to be consummated" and that the decision to divest Arixtra and keep Lovenox was based on "common business sense".  *Id*. at 11.  Given the significant differences noted by Mr. Silber between this matter and the FTC's investigation into the merger between

OSS and Aventis (*see* Def.'s Opp'n Letter dated April 28, 2011, Ex. A at 2-3), the fact that "considerable information about the merger...and the FTC's approval of it is public" (*Id.*), Defendants' representation that they have "already provided or will provide sufficient information about the acquisition of Aventis" and "the assignment of any contracts for the sale of Lovenox from Aventis" (Def.'s Opp'n Letter dated April 28, 2011 at 10), and Defendants' representation that "'Sanofi-Synethelabo' began the process of divesting Arixtra and other assets months before the FTC stated that the divestiture would be required for the proposed acquisition to be consummated" (*Id.* at 11), the Court finds that the materials sought in Plaintiff's Document Request Nos. 17-20 are irrelevant, unlikely to lead to the discovery of admissible evidence in this matter, and that production of same would unduly burden Defendants.  *See MacDermid Printing*, 2008 WL 323764, at *1; *see also Takacs*, 2009 WL 3048471, at *1.  For these reasons, Plaintiff's application to compel production related to Document Request Nos. 17-20 is denied.

With respect to Plaintiff's Document Requests Nos. 57-60, the Court has reviewed Plaintiff's requests (*see* Pl.'s Letter dated March 29, 2011 at 6-11), Defendants' responses thereto together with additional identifications (*see* Def.'s Opp'n Letter dated April 28, 2011 at 11-21), and Plaintiff's additional requests and arguments in support thereof (*see* Pl.'s Letter dated May 7, 2011 at 1-12; *see also id.* at Appendix).  As to those requests for information related to prior proceedings that Plaintiff has not withdrawn (*see* Pl.'s Letter dated May 7, 2011 at Appendix), based upon the identification, description, and arguments in opposition to the production of information related to those prior proceedings provided by Defendants (*see* Def.'s Opp'n Letter dated April 28, 2011 at 11-21), the Court finds that the information requested is irrelevant, unlikely to lead to the discovery of admissible evidence in this matter, and that production of same would unduly burden Defendants.  *See MacDermid Printing*, 2008 WL 323764, at *1; *see*

*also Takacs*, 2009 WL 3048471, at *1.  For these reasons, Plaintiff's application to compel production related to Document Request Nos. 57-59 is denied.

Having considered the papers submitted and the opposition thereto together with the parties' arguments during oral argument, and for the reasons set forth above and on the record;

**IT IS** on this 7th day of November, 2011,

**ORDERED** that Plaintiff's application to compel the production of prior proceedings is **DENIED**.

*s/ Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**