**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| EISAI INC., | : | **Civil Action No.: 08-4168 (MLC)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| SANOFI-AVENTIS U.S., LLC, et al., | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

**ARPERT, U.S.M.J**

      This matter having come before the Court on Motion by Defendants Sanofi-Aventis U.S., LLC and Sanofi-Aventis, U.S., Inc. (collectively, "Defendants") for leave to amend their Answer and Affirmative Defenses in order to assert Counterclaims and a Third-Party Complaint pursuant to FED. R. CIV. P. 15 [dkt. entry no. 158], returnable December 5, 2011. Plaintiff Eisai Inc. ("Plaintiff" or "Eisai") filed opposition to the Motion, together with a Cross-Motion to sever Defendants' Counterclaims and Third-Party Complaint pursuant to FED. R. CIV. P. 21 [dkt. entry no. 166]. Defendants filed a reply brief on December 2, 2011. For the reasons stated below, Defendants' Motion is **DENIED** and Plaintiff's Cross-Motion is **DENIED** as moot.

      In sum, "Fragmin...[is] a type of injectable anticoagulant drug" that has been sold in the United States since 1996, the rights to which were acquired by Plaintiff in 2005 and which has been marketed by Plaintiff since 2006. *See* Pl.'s Compl., dkt. entry no. 1 at 2, 10. Defendants market a competitor "anticoagulant product known as Lovenox". *Id.* On August 18, 2008, Plaintiff filed a Complaint alleging "monopolization of all relevant markets" (*see* Pl.'s Compl. at 21), "attempted monopolization of all relevant markets" (*Id.* at 22), "sale on condition not to use

goods of competitor and to force use of full line of Lovenox goods in all relevant markets" (*Id*. at 23), "agreements in restraint of trade in all relevant markets" (*Id*. at 23-24), and violation of the "New Jersey Antitrust Act" (*Id*. at 24-25), based upon Plaintiff's contention that Defendants designed "contractual practices...to preserve...[their] substantial and enduring monopoly in the market for injectable anticoagulant drugs" as Plaintiff contends that Defendants account "for in excess of 90% of all sales for these drugs" (*Id*. at 1-2). More specifically, Plaintiff alleges that Defendants have "expanded, protected, and maintained [their] monopoly power unlawfully, through a variety of anticompetitive means, including exclusionary contracts that draw upon and further protect the monopoly position of Lovenox". *Id*. at 2.  Thus, Plaintiff contends that Defendants' practices "blockad[e] entry by any firm not already in the market by assuring that after entry no new entrant [can] compete for more than 10% of market sales", "forestall effective competition from Plaintiff...by imposing barriers to Plaintiff's expansion of its market share...[and] thereby disabling Plaintiff from obtaining the same reputational advantages and economies of scale in manufacturing, marketing, and distribution that Defendants enjoy", and "deny consumers unrestricted choice of products, suppress improvements in patient care, reduce innovation, and prohibit lower prices". *Id*. at 4.  Plaintiff also maintains that because "Lovenox already enjoys a 90% market share and is the predominant drug on most hospital formularies", "replacing Lovenox with a new anticoagulant drug within that formulary is costly and time consuming for any hospital" and, "although Fragmin and Lovenox are both approved for a variety of uses, Lovenox has obtained a comparative stronghold with respect to certain uses".  *Id*. Thus, Plaintiff contends that Defendants' "monopoly-share condition operates so that a hospital that wishes to purchase anticoagulant drug products at the lowest price has no effective

2

alternative other than to purchase at least 90% of its product needs from Defendants" and therefore "excludes rival anticoagulant sellers from hospitals". *Id*. at 4-5.

With the instant Motion, Defendants seek leave to "amend their Answer and Affirmative Defenses to assert Counterclaims and a Third-Party Complaint pursuant to Rule 15(a)...". *See* Def.'s Br., dkt. entry no. 158-1 at 1. "Specifically, [Defendants] seek[] to assert the following Counterclaims...arising under New Jersey common law...against Plaintiff: (1) theft of trade secrets; (2) misuse of confidential business information; (3) unfair competition; (4) [tortious] interference with contracts; and (5) aiding and abetting breaches of the duty of loyalty". *Id*. Defendants also seek leave to file a Third-Party Complaint against "Frank Ciriello ("Ciriello"), David Trexler ("Trexler"), and John Does 1-10, former employees of Sanofi-Aventis US ("Sanofi US") who subsequently were or are employed by [Plaintiff]", asserting the following causes of action arising under New Jersey common law: "(1) theft of trade secrets; (2) misuse of confidential business information; (3) breaches of contracts; (4) breaches of the duty of good faith and fair dealing; and (5) breaches of the duty of loyalty". *Id*. Defendants maintain that "[r]ecent discovery has revealed that former employees of Sanofi US who subsequently became employees of Eisai have maintained Sanofi US's confidential information and trade secrets ("confidential information") and...disclosed and used the...confidential information...while at Eisai, all in contravention of agreements entered into with Sanofi US's predecessors in interest and in contravention of the law". *Id*. at 2. Defendants note that Plaintiff's "document production to date has included...[substantial] confidential information belonging to Sanofi US that [has] been kept in Ciriello and Trexler's files at Eisai". *Id*. at 2-3.

Defendants state that Ciriello's "tenure at Sanofi US's predecessor entities" began in

3

1985, and thereafter "he was promoted to various sales and marketing positions" and "had responsibility for developing sales and promotional strategies and materials and [for] selling, promoting, or marketing...Cardizem[,] Anzemet[,] Niladron[,] Claforan, Priftin, Ketek, ...Refludan[,] ...Allegra, Telfast, Nasacort, Picovir, ...Rilutek[,] ...and Alvesco". *Id*. at 3. Trexler's tenure at Sanofi US's predecessor entities began in 1986, and thereafter "he was promoted to various sales and marketing positions" and "had responsibility for developing sales and promotional strategies and materials and [for] selling, promoting or marketing...Cardizem, ...Ketek, ...[and] Picovir". *Id*. at 4. Defendants argue that the confidential information obtained by Ciriello and Trexler during their employment with Sanofi US's predecessors in interest included "sensitive sales and pricing data, forecasts, business strategy, marketing, research and development activities, promotions, customers, manufacturing and contracting" through various means, including "conversations with other Aventis employees regarding confidential information...during the course of their employment at Aventis". *Id*. at 6. Specifically, Ciriello "obtained confidential information...regarding Lovenox and other products and medications in development that were or are marketed, promoted, and explored by Sanofi US...including...Allegra, Picovir, and Ketek" and by virtue of his position "on Aventis' Executive Committee, Ciriello had the opportunity to review confidential and sensitive business plans and contracts and pricing data for various Aventis products, including Lovenox...". *Id*. at 6-7. "Similarly, Trexler obtained confidential information...regarding Aventis products and medications in development...including Ketek and Picovir". *Id*. at 7.

"In addition to...confidentiality agreements signed with predecessors to Aventis", Defendants maintain that "both Ciriello and Trexler signed superseding confidentiality

agreements in June of 2002 with Aventis ("Confidentiality Agreement")" that "sought to ensure that neither [individual]...would retain any confidential information...[or] would disclose any confidential information...[even] after they left employment with Sanofi US". *Id*. at 4-5. Further, "Ciriello and Trexler also acknowledged their obligation to return confidential and proprietary property belonging to Aventis". *Id*. at 5-6. Defendants note that after leaving their employment with Aventis, "Ciriello began working with Eisai as Vice President of Sales and Marketing" in September 2004 and Trexler began working "with Eisai as a Director of Marketing" sometime in 2005. *Id*. at 6. Despite the Confidentiality Agreements, Defendants contend, "[b]oth Ciriello and Trexler maintain in their possession and in their respective files at Eisai confidential information belonging to Sanofi US" based upon documents produced by Plaintiff "in the underlying litigation...[which] are not publicly available and could not have been shared with Eisai but for Ciriello and Trexler's active disclosures". *Id*. at 7. Defendants have provided a list of the "types of confidential information...belonging to Sanofi US revealed in Eisai's files" which includes "product review presentations for Lovenox...and other taxane products used in and under development for the oncology markets". *Id*. at 8-9. "Ciriello and Trexler disclosed and used these types of confidential information...to further Eisai's business goals and to gain an unfair competitive advantage". *Id*. at 9. Specifically, Defendants allege that:

> -Ciriello "copied verbatim and plagiarized a portion of Sanofi US's...Brand Plan Review for Allegra for the years 2002-2011 for use in a presentation called 'Fragmin' Eisai Commercial Assessment...[when] negotiating...[a contract] with Pfizer...for the marketing rights for Fragmin in the United States" to "help Eisai value the purchase rights to distribute Fragmin prior to completing the deal with Pfizer and to develop business plans and commercial

assessments for Fragmin";

-Eisai "improperly solicited and encouraged Ciriello to use his knowledge of Sanofi US's confidential information to assess and value potential business opportunities for Eisai's benefit and for other competitive purposes" including with respect "to Allegra...[in order] to assess and value Eisai's potential business opportunity involving Omnaris, a product that treats rhinitis and other symptoms of allergies";

-Trexler "disclosed to Eisai employees and agents Sanofi US's confidential information relating to Ketek...with the intent and purpose of preparing a 'plan of action' playbook for Fragmin"; and

-Eisai "has knowingly, and without justification, used Sanofi US['s] confidential information disclosed by Ciriello, Trexler, and other former Sanofi US employees for the purpose of furthering Eisai's business purposes and gaining an unfair competitive advantage".

*Id.* at 9-10.

Defendants claim that "but for the recent production of documents by [Plaintiff]..., Defendants would not...and could not...have discovered the existence of Sanofi US's confidential information in Eisai's files". *Id.* at 7. Citing FED. R. CIV. P. 15(a)(2), *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000), *Foman v. Davis*, 371 U.S. 178, 182 (1962), *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990), *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006), and *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989), Defendants argue that "[t]here has been no undue delay" in seeking leave to amend because "the proposed Counterclaim[] and Third-Party [Complaint]...are based on facts only recently discovered through [this] litigation". *Id.* at 10-11. Specifically, Plaintiff's document production in the summer of 2011 and Ciriello's deposition "on September 16, 2011...revealed that [he] did in fact possess confidential information regarding Sanofi US's practices relating to Lovenox and other Sanofi US products"

6

such that leave to amend "is being sought as promptly as possible following the discovery". *Id*. at 10-11.  Defendants claim that "Eisai, Ciriello, and Trexler would not be disadvantaged or deprived of the opportunity to defend themselves from the proposed Counterclaim[] and Third-Party Complaint". *Id*. at 10-11.  Further, citing *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990), Defendants argue that "[t]he proposed claims are not brought in bad faith...[and] would not be futile because they are neither frivolous nor facially 'legally insufficient'". *Id*. at 12-13.

With respect to Defendants' proposed Counterclaim and Third-Party Complaint claims of theft of trade secrets and misuse of confidential information, Defendants cite *Givaudan Fragrances Corp. v. Krivda*, 2010 U.S. Dist. LEXIS 39588, at *13-14 (D.N.J. 2010), *Rohm and Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 429-30 (3d Cir. 1982), *Graco, Inc. v. PMC Global, Inc.*, 2009 U.S. Dist. LEXIS 26845, at *79 (D.N.J. 2009), and *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 112 (3d Cir. 2010) for the proposition that their allegations of misappropriation of trade secrets – specifically, Defendants note that they have asserted that they (1) possess trade secrets which are vital to their business, (2) that those trade secrets were revealed in confidence to Ciriello and Trexler as employees of Sanofi US, (3) that Ciriello and Trexler stole, held onto, and disclosed Sanofi US's trade secrets to Eisai without regard to their obligations not to disclose, (4) that Ciriello and Trexler disclosed the trade secrets to Eisai knowing that the information was protected, and (5) that Eisai used the disclosed trade secrets to gain a competitive advantage and thereby caused damage to Defendants – are adequate and would not be futile.  *Id*. at 13-14.  Further, Defendants cite *Thomas & Betts Corp. v. Mfg. Co.*, 342 Fed. Appx. 754, 759-60 (3d Cir. 2009), *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 300-

01 (2001), and *Roman Chariot, LLC v. JMRL Sales & Serv.*, 2006 U.S. Dist. LEXIS 46620, at

*15 n.6 (D.N.J. 2006) for the proposition that their allegations of misappropriation of

confidential information – specifically, Defendants note that they have asserted that (1) Ciriello

and Trexler were exposed to confidential information as a result of their positions at Sanofi US'

predecessors, (2) that neither Ciriello nor Trexler would have been exposed to such material if

not for their positions at Sanofi US' predecessors, (3) that Eisai obtained a competitive advantage

as a direct result of Ciriello's and Trexler's disclosure of Sanofi US' confidential information,

and (4) Ciriello, Trexler, and Eisai were aware that Sanofi US had an interest in protecting the

confidential information to maintain a competitive advantage – are adequate and would not be

futile.  *Id*. at 14-16.

       With respect to Defendants' proposed Counterclaim and Third-Party Complaint claims of

breach of contractual and legal obligations, Defendants cite *Graco*, 2009 U.S. Dist. LEXIS 26845

at *45, *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007), *Sons of Thunder, Inc. v.*

*Borden, Inc.*, 148 N.J. 396, 420 (1997), and *Lamorte Burns*, 167 N.J. at 304 for the proposition

that their allegations of the existence of Confidentiality Agreements between Ciriello/Trexler and

Sanofi US and breach of contract, the implied covenant of good faith and fair dealing, and the

duty of loyalty by Ciriello and Trexler for failing to adhere to the terms of the Confidentiality

Agreements are adequate and would not be futile.  *Id*. at 16-17.  Specifically, Defendants

maintain that Ciriello and Trexler's failure to act in accordance with the Confidentiality

Agreements resulted in damage to Sanofi US and improper benefits inuring to Ciriello, Trexler,

and Plaintiff.  *Id*.

       Finally, with respect to Defendants' proposed Counterclaim of unfair competition

Defendants cite *Ryan v. Carmona Bolen Home for Funerals*, 341 N.J. Super. 87, 92 (N.J. Super. Ct. App. Div. 2001), *Columbia Broadcasting Sys. v. Melody Recordings*, 134 N.J. Super. 368, 376 (N.J. Super. Ct. App. Div. 1975), and *Reckitt Benckiser Inc. v. Tris Pharma, Inc.*, 2011 U.S. Dist. LEXIS 19713, at *24-26 (D.N.J. 2011) for the proposition that their allegations that Plaintiff "purposefully and wrongfully obtained an unfair competitive advantage by using Sanofi US's confidential information to further its own business purposes in developing, marketing, and selling products that compete with products marketed, developed, and confidentially considered by Sanofi US" are adequate and would not be futile. *Id*. at 17-18.  Defendants maintain that Plaintiff "misappropriated [the] confidential information" of Sanofi US and, in fact, "even sought after and encouraged the disclosure of confidential information...and used the information...to obtain a competitive advantage". *Id*. at 18.  Defendants cite *Russo v. Nagel*, 358 N.J. Super. 254, 268 (N.J. Super. Ct. App. Div. 2003), *Graco*, 2009 U.S. Dist. LEXIS 26845 at *70 for the proposition that their allegations of tortious interference – specifically, that Plaintiff "was or should have been aware of the fact that both Ciriello and Trexler were [subject to] Confidentiality Agreements with their prior employers" and nevertheless "purposefully and without justification solicited from Ciriello and Trexler...and even used...confidential information...belonging to Sanofi US to further Eisai's own business purposes" – are adequate and would not be futile. *Id*. at 18-19.  Further, Defendants cite *N.J., Dep't of Tresury, Div. of Inv. ex rel. McCormac v. Quest Commc'ns Int'l, Inc.*, 387 N.J. Super. 469, 480-84 (N.J. Supt. Ct. App. Div. 2006), *Tarr v. Ciasulli*, 181 N.J. 70 (N.J. 2004), *Judson v. Peoples Bank Trust & Co.*, 25 N.J. 17, 29 (N.J. 1957), and *Lamorte Burns*, 167 N.J. at 303-04 for the proposition that their allegations of aiding and abetting breaches of the duty of loyalty – specifically, that Plaintiff and

its employees "actively solicited information from Ciriello and Trexler and...the subsequent disclosure of that information violated the Confidentiality Agreements" and that Plaintiff "knew the source of the information and its confidential proprietary nature" but nevertheless "sought to use the information despite this fact...and directly participated in the breach of the Confidentiality Agreements" – are adequate and would not be futile. *Id*. at 19-20.

In opposition and by way of the instant Cross-Motion, Plaintiff contends that Defendants have changed their strategy from "delay and denial" to "the best defense is an aggressive offense" by seeking to launch "a ten-count [C]ounterclaim/[T]hird-[P]arty [C]omplaint against Eisai and adding two of its former employees as new parties to the action". *See* Pl.'s Opp'n Br., dkt. entry no. 167 at 1.  Plaintiff asserts that "[t]hese claims are little more than a thinly-veiled attempt to dissemble the pertinent inquiry into [Defendants'] anticompetitive practices" because Defendants have not "suffered any compensable harm" and are not "entitled to monetary damages" even "if all of the allegations are presumed true".  *Id*.  Plaintiff maintains that if Defendants feel strongly about their claims, "which are wholly unrelated to the Lovenox litigation, [they are] free to bring them in an unrelated lawsuit" but "should not be permitted to use [such] claims to further stonewall and delay [the] current lawsuit which is already more than three years old".  *Id*. Alternatively, Plaintiff maintains that Defendants' "[C]ounterclaim/[T]hird-[P]arty [C]omplaint must be severed from [Eisai's] antitrust action under Rule 21" because severance "will not impact [Defendants'] ability to get a fair and timely resolution and compensation for any harm...suffered" and will help to avoid "chaos and confusion" given that "the antitrust claims and employment law [C]ounterclaim/[T]hird-[P]arty [C]omplaint are...unrelated...[and] extremely complicated".  *Id*. at 2.

Plaintiff acknowledges that Trexler and Ciriello, "[t]wo current Eisai employees, ...worked for Sanofi US until 2004" and does not dispute Defendants' contention that documents produced by Plaintiff "over the summer showed that [Trexler and Ciriello] each had copies of Sanofi US' documents in his personal custodial file at Eisai". *Id*. at 4.  However, Plaintiff notes that Defendants "have not alleged that either Trexler or Ciriello had direct responsibility for Lovenox, the only...drug at issue in Eisai's antitrust action". *Id*.  Rather, Defendants allege:

> -that "Trexler worked in sales of...cardiovascular, anti-infective, and respiratory medications and was promoted to Anti-Infective Product Director" and that "Ciriello worked in sales of...cardiovascular, oncology, and anti-infective medications and was promoted to Vice-President of the Respiratory franchise";
>
> -"Trexler obtained confidential information about Ketek, Picovir, and other...drugs...without asserting that Lovenox was one of the drugs he purportedly obtained information about" and that "Ciriello had the opportunity to review confidential information for various Aventis products...including Lovenox";
>
> -any issue or involvement with "Lovenox only once" within their "21-point list of purportedly misappropriated materials in Trexler and Ciriello's files" bundled "with references to seven other drugs...making it impossible to discern what, if any, Lovenox materials were purportedly misappropriated"; and
>
> -that "Ciriello 'plagiarized' an Allegra presentation from 2002...to create an Eisai Commercial Assessment for 'Fragmin'" and that "Trexler disclosed a Ketek playbook with the intent and purpose of preparing a 'plan of action' playbook for Fragmin".

*Id*. at 4-5.  Plaintiff argues that it is unclear "[w]hat these roundabout allegations mean or their possible relationship to Eisai's antitrust claims". *Id*. at 5.

Citing *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990), *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006), *Foman v. Davis*, 371 U.S. 178,

11

182 (1962), and *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993), Plaintiff acknowledges that "leave to amend...[is] generally...granted unless equitable considerations render it otherwise unjust" and that "[i]n the absence of substantial or undue prejudice, denial of leave to amend must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment". *Id*. at 5, 7. However, Plaintiff argues that Defendants' Motion "ought to be denied on the basis that it is untimely, prejudicial and grounded in bad faith and with dilatory motives" given that Defendants seek "to add...counterclaims and third-party claims against two Eisai employees" that are unrelated to Plaintiff's antitrust lawsuit. *Id*. at 7. Plaintiff argues Defendants' Motion "is nothing more than another tactic being used by [Defendants] to further delay this lawsuit" given that Defendants' new allegations "have virtually nothing to do with Eisai's underlying antitrust claims" and given the timing of Defendants' Motion as it comes "on the eve of mediation and after discovery has revealed...damaging information regarding [Defendants'] sales practices and operations concerning Lovenox". *Id*. Plaintiff notes that "Defendants have long known of [Trexler and Ciriello's] affiliation with Eisai", thereby calling into doubt Defendants' motivation "to institute these claims at this time". *Id*. at 7-8. Further, Defendants' "amendment at such a late juncture...would be highly prejudicial" and force Plaintiff "to defend against complex employment claims at the same time as prosecuting an extremely complex antitrust action", drawing "focus and resources away from Eisai's...claims concerning...antitrust violations" and throwing an already "advanced discovery process into unmanageable chaos". *Id*. at 8. In sum, Plaintiff argues that "there is no reason Defendants cannot file whatever claims they have against...Ciriello, Trexler and Eisai as an entirely independent action". *Id*.

12

In the alternative, if the Court grants Defendants' Motion, Plaintiff requests that the Court "sever the new claims" pursuant to FED. R. CIV. P. 21.  *Id.*  Citing *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1061 (3d Cir. 1978), Plaintiff maintains that its "2008 antitrust action over Lovenox is unrelated to Defendants'...[C]ounterclaim/[T]hird-[P]arty [C]omplaint over two former employees' alleged misappropriation of proprietary information about other drugs".  *Id.* at 8-9.  Specifically, Defendants "do not allege that either employee had any direct responsibility for Lovenox while at Sanofi US" nor do they allege "that either employee appropriated sensitive information about Lovenox" but, rather, Defendants simply "claim that one of the two [employees] had the 'opportunity to review' Lovenox materials...based on his position in the company".  *Id.* at 9.  Further, Plaintiff maintains that Defendants have not alleged "any specific facts to substantiate their...allegations that Eisai had any role in these employees' alleged misappropriation of Defendants' proprietary information or were able to profit from it in any meaningful...or measurable...way".  *Id.*  Plaintiff notes that this is an antitrust action that "presents extraordinarily complex economic issues and has enormous financial implications".  *Id.* at 9-12.  Considering the allegations, supporting data, and expert testimony that will be presented at trial with respect to each count in the Complaint and asserting that "trial will...take several weeks", Plaintiff contends that "[j]urors will likely be pushed to their limits...[even] without...considering the...[proposed] counterclaims".  *Id.* at 9-12.  To the contrary, Plaintiff argues that "Defendants' [C]ounterclaim/[T]hird-[P]arty [C]omplaint bears no resemblance to Eisai's antitrust action" and "will require lengthy proceedings and substantial proof, ...none of...[which is] related to Eisai's antitrust action".  *Id.* at 12-16.  Plaintiff notes that "both Ciriello and Trexler...stopped working for [Sanofi US] in 2004 before Eisai purchased Fragmin in 2005"

and, therefore, "reconstructing...[their] relationship with [Sanofi US] before 2005 or their respective intentions at that time would take considerable effort". *Id.* at 14.  Further, Plaintiff argues that "there is nothing in the [C]ounterclaim/[T]hird-[P]arty [C]omplaint that suggests any meaningful relationship between these allegations and Eisai's antitrust action challenging the Lovenox monopoly". *Id.* at 15.

Plaintiff contends that "[t]o the extent that there is any merit to the ten counts of...[Defendants'] [C]ounterclaim/[T]hird-[P]arty [C]omplaint, [Defendants]...could have filed them as an independent lawsuit and proceeded promptly with discovery, [motion] practice, and...trial". *Id.* at 16.  Citing *Xerox Corp.*, 576 F.2d at 1061, Plaintiff asserts that the true objective of Defendants' amendment is "to create more delay, greater confusion, and undue prejudice to Eisai". *Id.*  Citing *Pearl Brewing Co. v. Joseph Schlitz Brewing Co.*, 415 F. Supp. 1122, 1133-34 (S.D. Tex. 1976, Plaintiff argues that "courts are appropriately wary of allowing antitrust defendants to overwhelm jurors with counterclaims that obscure the proper inquiry". *Id.* at 16-17.

Plaintiff cites FED. R. CIV. P. 21, *Fowler v. UPMC Shadyside*, 578 F.2d 203, 209 n.5 (3d Cir. 2009), *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 n.6 (3d Cir. 1999), and *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844-45 (3d Cir. 2006) and argues that although "[c]ombining the antitrust claims and the ten counts of the [C]ounterclaim/[T]hird-[P]arty [C]omplaint in one action would seriously prejudice Eisai by having its antitrust action further delayed and unsettled by complex and irrelevant third-party claims and counterclaims that are likely to confuse a jury", "severing the [C]ounterclaim/[T]hird-[P]arty [C]omplaint creates no remotely comparable prejudice to [Defendants]". *Id.* at 18.  Plaintiff cites *Jones v. Corzine*, 2010 WL 1948352, at *10 (D.N.J.

14

2010) and *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 567 (3d Cir. 1985) for the proposition that "although confusion and prejudice provide ample reason to sever, efficiency concerns alone merit severance of the [C]ounterclaim/[T]hird-[P]arty [C]omplaint". *Id*.  Separately, if the Court will not sever Defendants' new claims pursuant to FED. R. CIV. P. 21, Plaintiff requests that the Court "use its discretion to [order a] separate [trial of] the [C]ounterclaim/[T]hird-[P]arty [C]omplaint" pursuant to FED. R. CIV. P. 42.  *Id*. at 19.  Plaintiff cites *Briggs & Stretton Corp. v. Kohler Co.*, 2005 WL 1711154, at *4 (W.D. Wis. 2005) and *Brandt, Inc. v. Crane*, 97 F.R.D. 707, 708 (N.D. Ill. 1983) to support its argument that "antitrust claims are frequently separated from the opposing party's claims" due to their "inherent mass and complexity".  *Id*.

As an initial matter, the Court is aware that it "should freely give leave [to amend] when justice so requires" (FED. R. CIV. P. 15(a)(2); *see also Bjorgung v. Whitetail Resort, LP,* 550 F.3d 263, 266 (3d Cir. 2008)) and that the decision to grant a motion to amend a pleading rests in the sound discretion of the district court (*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1970); *see also Morton International, Inc. v. A.E. Staley Manuf. Co.*, 106 F. Supp. 2d 737, 744 (D.N.J. 2000)).  The Court "has discretion to deny the request only if the [movant's] delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party".  *Adams v. Gould,* 739 F.2d 858, 864 (3d Cir. 1984); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006); *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005).  Delay becomes "undue", and thereby creates grounds for the district court to refuse to grant leave, when it places an unwarranted burden on the Court, when the movant has had previous opportunities to amend, or when it becomes prejudicial to the opposing party.  *See Adams*, 739 F.2d at 868; *see also Cureton v. NCAA*, 252 F.3d 267, 273

15

(2001). "[T]he Third Circuit has consistently recognized that 'prejudice to the non-moving party is the touchstone for the denial of an amendment'". *Schindler Elevator Corp. v. Otis Elevator Co.*, 2009 U.S. Dist. LEXIS 40994, at *9 (D.N.J. 2009); *see also Arthur*, 434 F.3d at 204 (*quoting Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). A trial court may also deny leave to amend where "an amendment would be futile when the 'complaint, as amended, would fail to state a claim upon which relief could be granted'" (*In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002)(*quoting In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)) based upon whether the Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face" (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[I]n determining the futility of an amendment, the Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)" and "accept[s] as true all factual allegations contained in the proposed amended [pleading] and any reasonable inferences that can be drawn from them". *Walls v. County of Camden*, 2008 WL 4934052, at *2 (D.N.J. 2008); *see also Medpointe Healthcare, Inc. v. Hi-Tech Pharm. Co., Inc.*, 380 F. Supp. 2d 457, 462 (D.N.J. 2005); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000); *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 796 (3d Cir. 2001). "[I]f the proposed amendment is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend", but where the "proposed amendment is not clearly futile, then denial of leave to amend is improper". *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468-49 (D.N.J. 1990). Further, with respect to a third-party complaint, "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately". FED. R. CIV. P. 14(a)(4).

The Court also notes that "*Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d

16

631, 634 (3d Cir. 1961)...established that the operative question in determining if a claim is a compulsory counterclaim is whether it bears a logical relationship to an opposing party's claim". *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978).

> A counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts.  Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action.   Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently.

*Id.*; *see also Great Lakes*, 286 F.2d at 634.  Therefore, "a detailed analysis must be made to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties".  *Id.*; *see also Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 (1974).  The Court notes that in one case involving antitrust allegations, the court found that "[s]imultaneous presentation of the claim and counterclaim...could well confuse the jury into basing a decision, at least in part, upon the allegedly 'unclean hands' of plaintiffs, in acting within the appropriate market, when the proper inquiry as to plaintiffs' entitlement to recovery should be whether the defendant has engaged in any activity violative of the Sherman Act so as to have caused injury and measurable damages to any or all of the plaintiffs".  *Pearl Brewing Co. v. Jos. Schlitz Brewing Co.*, 415 F. Supp. 1122, 1133 (S.D. Tex. 1976).

The Court notes that pursuant to FED. R. CIV. P. 21, although "[m]isjoinder of parties is not a ground for dismissing an action", the "court may at any time, on just terms, add or drop a

17

party" or "sever any claim against a party".  "Although Rule 21 is most commonly used to solve joinder problems, the rule may also be invoked to prevent prejudice or promote judicial efficiency".  *Turner Constr. Co. v. Brian Trematore Plumbing & Heating, Inc.*, 2009 U.S. Dist. LEXIS 92309, at *11 (D.N.J. 2009).  "When a court 'severs' a claim against a defendant under FED. R. CIV. P. 21, the suit simply continues against the defendant in another guise", "[t]he statute of limitations is held in abeyance, and the severed suit can proceed so long as it initially was filed within the limitations period".  *Fowler v. Shadyside*, 578 F.3d 203, 209 n.5 (3d Cir. 2009).  "[I]f claims are severed pursuant to Rule 21[,] they become independent actions with separate judgments entered in each".  *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 n.6 (3d Cir. 1999); *see also DirecTV, Inc. v. Leto*, 467 F.3d 842 (3d Cir. 2006).  "Although Rule 21 is most commonly invoked to sever parties improperly joined under Rule 20, the Rule may also be invoked to prevent prejudice or promote judicial efficiency".  *Jones v. Corzine*, 2010 WL 1948352, at *10 (D.N.J. 2010).  "Specific factors to be considered in determining whether severance is warranted include: (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting severance will be prejudiced if it is not granted".  *Id.*; *see also German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995); *Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D. Pa. 2000).

Pursuant to FED. R. CIV. P. 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims,

crossclaims, counterclaims, or third-party claims".  "As a general rule, separate trials of patent and antitrust claims further the interests of convenience, expediency and economy" due to the fact that "antitrust claims...require proof quite different in nature and scope than the proof relevant to...patent issues".  *Brandt, Inc. v. Crane*, 97 F.R.D. 707, 708 (N.D. Ill. 1983); *see also Alarm Device Manufacturing Co. v. Alarm Products International, Inc.*, 60 F.R.D. 199, 202 (E.D.N.Y. 1973); *Fischer & Porter Co. v. Sheffield Corp.*, 31 F.R.D. 534 (D. Del. 1962); *Briggs & Stratton Corp. v. Kohler Co.*, 2005 WL 1711154, at *4 (W.D. Wis. 2005).

As with motions to amend, "[t]he decision whether to sever claims pursuant to Rule 21 or bifurcate claims pursuant to Rule 42(b) is committed to the sound discretion of the district court".  *Turner Constr.*, 2009 U.S. Dist. LEXIS 92309 at *12; *see also Crowley v. Chait*, 2006 U.S. Dist. LEXIS 8894, at *22 (D.N.J. 2006).  "Severing claims under Rule 21 is appropriate where the claims to be severed are discrete and separate in that one claim is capable of resolution despite the outcome of the other claim".  *Id.*  The Court notes that it "has the inherent power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" and such inherent power "provides authority to fashion tools that aid the court in getting on with the business of deciding cases".  *Jones*, 2010 WL 1948352 at *10.

Here, even while accepting "as true all factual allegations contained in the proposed...[Counterclaim and Third-Party Complaint]" and assuming that the proposed pleadings are not futile (*Walls*, 2008 WL 4934052 at *2; *see also Bell Atl.*, 550 U.S. at 570), and even while acknowledging Defendants' previously pled Eighth Affirmative Defense of "unclean hands" (Def.'s Ans., dkt. entry no. 62 at 12), the Court finds that granting Defendants leave to file the proposed Counterclaim and Third-Party Complaint would significantly prejudice Plaintiff

in light of the progress of this matter to date and the substantial delay in reaching an ultimate resolution that would likely result.  Specifically, although the Complaint in this matter was filed in August 2008 (*see* Pl.'s Comp., dkt. entry no. 1), fact discovery did not commence until January 3, 2011 (*see* dkt. entry no. 133) following resolution of Plaintiff's motion to change venue (*see* dkt. entry nos. 5 & 17), Defendants' motion to dismiss (*see* dkt. entry nos. 28 & 59), Defendants' motion to dismiss or for summary judgment (*see* dkt. entry nos. 75, 119 & 12), and Defendants' motion for 28. U.S.C. 1292(b) certification and stay of proceedings (*see* dkt. entry no. 122 & 132).  Although fact discovery was originally scheduled to be completed by November 30, 2011 (*see* dkt. entry no. 133), and notwithstanding the parties' efforts throughout 2011, the deadline to complete fact discovery was extended to March 30, 2012 (*see* dkt. entry no. 157) and the Court expects this deadline to be met in the absence of resolution during the mediation which is scheduled for January 30, 2012 (*see* dkt. entry no. 170).  Granting Defendants leave to file their proposed Counterclaim and Third-Party Complaint would undoubtedly result in additional motion practice as well as substantial additional fact discovery related to Defendants' allegations. Therefore, based upon the procedural history of this matter and the substantial progress that has already been made toward the completion of fact discovery relevant to Plaintiff's existing antitrust allegations, the Court finds that Plaintiff's right to a swift adjudication of its claims would be prejudiced if this matter were further delayed by allowing Defendants' to file their proposed Counterclaim and Third-Party Complaint.

The Court also finds that although there may be some areas involving similar factual or legal issues between Plaintiff's Complaint and Defendants' proposed Counterclaim and Third-Party Complaint, the parties' respective claims are not "offshoots of the same basic controversy

between the parties" (*Xerox*, 576 F.2d at 1059; *see also Great Lakes*, 286 F.2d at 634) such that the "issues sought to be tried...are significantly different from one another" and will likely "require the testimony of different witnesses and different documentary proof" (*Jones*, 2010 WL 1948352 at *10).  As set forth above, Plaintiff's existing claims are based upon allegations against Defendants involving: unlawful restraint of trade, which will require Plaintiff to demonstrate that Defendants had "(1) an anticompetitive agreement (2) with an illegal objective that (3) [injured] Eisai and (4) [had] an adverse effect upon the relevant product market in the relevant geographic market"; monopolization and attempted monopolization, which will require Plaintiff to demonstrate that Defendants "(1) possessed 'monopoly power' in the relevant market, (2) willfully acquired or maintained that power, and (3) caused antitrust injury...which reflects the 'anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation"; and exclusive dealing, which will require Plaintiff to demonstrate that "Defendants' strateg[y] and conduct...[sought] to foreclose competition in a substantial share of the relevant line of commerce" by way of "the restrictiveness and the economic usefulness of the challenged practices in relation to the business facts extant in the market".  *See* Pl.'s Opp'n Br. at 9-12.

Oppositely, Defendants' claims against Plaintiff and/or Ciriello, Trexler, and John Does 1-10 involve: theft of trade secrets, which would require Defendants to demonstrate that "(1) a trade secret exists[,] (2) the information comprising the trade secret was communicated in confidence by...[Defendants] to the employee[,] (3) the secret information was disclosed by that employee and in breach of that confidence[,] (4) the secret information was acquired by a competitor with knowledge of the employee's breach of confidence[,] (5) the secret information was used by the competitor to the detriment of...[Defendants][,] and (6) [Defendants] took

21

precautions to maintain the secrecy of the trade secret"; misuse of confidential business information, which would require Defendants to make a showing similar to that set forth above with respect to theft of trade secrets in addition to a demonstration of the relationship of the parties at the time of disclosure...and intended use"; tortious interference with contracts, which would require Defendants to demonstrate "(1) [a]n existing contractual relationship or reasonable expectation of economic advantage[,] (2) intentional interference with that relationship that [was] without justification or excuse[,] [(3)] loss of the prospective gain or of the contract caused by the interference[,] [and] [(4)] some damage caused by the interference"; breach of contract, which would require Defendants to demonstrate "that (1) a contract existed[,] (2) [Defendants] did not breach [the contract,] (3) [each employee] breached [the contract,] and (4) [Defendants] suffered loss or damage as a result"; breach of the duty of good faith and fair dealing, which would require Defendants to demonstrate "that (1) some type of contract existed between the parties[,] (2) [each employee] acted in bad faith for the purpose of depriving [Defendants] of rights or benefits under the contract[,] and (3) [each employees'] conduct caused injury, damage, loss or harm to [Defendants]"; and breach of the duty of loyalty, together with aiding and abetting breach of the duty of loyalty, which would require Defendants to demonstrate that each employee, while employed, acted contrary to Defendants' interests and that such actions or conduct are serious enough to constitute a breach based upon each employee's position. *See* Pl.'s Opp'n Br. at 12-16; *Trico Equip., Inc. v. Manor*, 2011 U.S. Dist. LEXIS 17936, at *16-18 (D.N.J. 2011).

Arguably, the only proposed allegation with any degree of symmetry with Plaintiff's antitrust allegations is Defendants' claim of "unfair competition" against Plaintiff. *See* Def.'s Br.

at 1, 17-20.  However, again, this allegation centers on Ciriello and Trexler's disclosure of Sanofi US's confidential information and Plaintiff's subsequent use of that information for its own business purposes.  Indeed, the Court finds that "[s]imultaneous presentation of the claim and counterclaim...could well confuse the jury".  *Pearl Brewing*, 415 F. Supp. at 1133.  Therefore, based upon the degree of difference between Plaintiff's antitrust claims and Defendants' claims, the Court finds that granting Defendants leave to file their proposed Counterclaim and Third-Party Complaint would significantly prejudice Plaintiff's ability to timely prosecute its case in the most efficient and least confusing manner during the remainder of discovery and throughout trial.  Furthermore, the Court finds that Defendants will not be prejudiced if their proposed Counterclaim and Third-Party Complaint were filed as a separate action as Plaintiff concedes they are entitled to do.

Having considered the papers submitted and the opposition thereto, and for the reasons set forth above;

**IT IS** on this 4rd day of January, 2012,

**ORDERED** that Defendants' Motion for leave to amend their Answer and Affirmative Defenses to assert Counterclaims and a Third-Party Complaint pursuant to FED. R. CIV. P. 15 [dkt. entry no. 158] is **DENIED**; and it is further

**ORDERED** that Plaintiff's Cross-Motion to sever Defendants' Counterclaims and Third-Party Complaint pursuant to FED. R. CIV. P. 21 [dkt. entry no. 166] is **DENIED** as moot.

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**

23