NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **EISAI INC.,** | : | **Civil Action No.: 08-4168 (MLC)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| **SANOFI-AVENTIS U.S., LLC, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

**ARPERT, U.S.M.J**

## I.    INTRODUCTION

This matter comes before the Court on the application of Plaintiff Eisai Inc. ("Plaintiff or "Eisai"), by letter to the Court dated February 7, 2012, to compel Defendants Sanofi-Aventis U.S., LLC and Sanofi-Aventis, U.S., Inc. (collectively, "Defendants" or "Sanofi") to produce discovery from an additional 175 field sales force representatives. Defendants submitted opposition to Plaintiff's application in a letter dated February 21, 2012. Plaintiff replied by letter dated February 27, 2012. This matter also comes before the Court on the application of Plaintiff, by letter to the Court dated March 15, 2012, to compel Defendants to produce discovery from the final 3 of the original Court-ordered 75 field sales force representatives identified by Plaintiff and to compel Defendants to produce discovery from 27 custodians that Plaintiff claims have documents responsive to its discovery requests. Defendants submitted opposition to Plaintiff's application in a letter dated March 26, 2012. Plaintiff replied by letter dated March 29, 2012.

The Court conducted a telephone status conference on the record on April 2, 2012 during which oral argument was entertained. For the reasons stated on the record and below, Plaintiff's

application to compel the production of discovery from an additional 175 field sales force representatives is **DENIED** without prejudice, Plaintiff's application to compel Defendants to produce discovery from the final 3 field sales force representatives previously identified by Plaintiff is **GRANTED**, and Plaintiff's application to compel Defendants to produce discovery from 27 custodians that Plaintiff claims have documents responsive to its discovery requests is **DENIED** without prejudice.

Because the facts of this case are well known to the parties, and in light of the numerous Opinions and Orders previously issued by this Court, the Court will simply include the facts relevant to this application and otherwise incorporates the facts set forth in its previous Opinions and Orders.

## II.    PLAINTIFF'S APPLICATIONS

### A.    <u>Plaintiff's application to compel Defendants to produce discovery from an additional 175 field sales force representatives</u>

With this application, Plaintiff requests "an Order compelling...[Defendants] to produce documents and materials from an additional 175 sales representatives".  *See* Pl.'s Letter dated February 7, 2012 at 2.  Noting that the "discoverability of sales force materials was previously briefed and argued" and that in March 2011, the Court "ordered that [Defendants] produce materials from...75...employees that [Plaintiff] requested...with the opportunity to seek additional representatives thereafter", Plaintiff claims that it reserved "the right to seek discovery from additional sales force employees beyond the 75 persons previously ordered".  *Id*. at 1.  On December 28, 2011, Plaintiff "identified an additional 50 sales force employees (beyond the initial 75) whose documents and materials it sought".  *Id*.  However, after a meet and confer

session on February 3, 2012, Defendants "represented that...[they] refused to produce any further sales force discovery absent an order from the Court". *Id.* Noting that the "parties have very different positions regarding the evidence required for [Plaintiff] to establish its claims" and that Defendants have stated "that [Plaintiff] must establish causation and damages through evidence of individual, customer-by-customer foreclosure of Fragmin from the market", Plaintiff argues that "[u]nder [Defendants'] theory, without full sales force discovery [Plaintiff] will be prevented access to proof it may need to show both the illegal behavior of [Defendants] and the affect on each customer". *Id.* at 2. However, Plaintiff "believes a production of an additional 175 sales representatives will create a sufficient body of evidence [from] which the behavior of the remaining sales force and conduct with customers can be extrapolated". *Id.*

Plaintiff argues that a review of Defendants' "initial, limited set of sales force discovery revealed numerous...documents relevant to and supportive of [Plaintiff's] allegations". *Id.* at 2. "The sales force discovery is replete with documents showing that...[Defendants'] sales representatives executed the directives of their superiors to use the Lovenox contract as a marketing tool to thwart the competition...[and] to threaten customers with the certainty of price penalties if they did not abide by the 90% monopoly-share condition of the Lovenox contract". *Id.* Further, Plaintiff contends that "[t]he sales force discovery also includes an abundance of documents reflecting the sales force's execution of the marketing team's directives to assert claims of Lovenox' superiority and engage in a campaign to invoke...fear, uncertainty, and doubt about other Low Molecular Weight Heparins ("LMWH")...despite the lack of supporting clinical evidence and in violation of FDA regulations...in an effort to enforce the Lovenox contract and ensure that customers continued to pay Lovenox' premium price". *Id.* Finally, Plaintiff claims

3

that "the sales force documents identify specific customers whose purchasing behavior has been influenced by the restrictive conditions of the Lovenox contract and the conduct of...[Defendants'] sales force, including customers who have strictly limited their purchase of other LMWHs...or prohibited altogether the use of other LMWHs...because of the Lovenox contract". *Id.*

Plaintiff argues that "nothing in [Defendants' opposition] warrants reconsideration of the Court's prior ruling of March 2011 that...[information from field sales force representatives is] discoverable" and Defendants have in fact "conceded the relevance of this discovery when...seeking sales force discovery from [Plaintiff]". *See* Pl.'s Reply Letter dated February 27, 2012 at 2. Plaintiff claims that Defendants' "primary argument" against further field sales force discovery – that it is too expensive and burdensome – belies the fact that "antitrust discovery is expensive" and belies Defendants' position that Plaintiff "must prove foreclosure on a customer-by-customer basis...[,] necessarily requir[ing] full sales force discovery...[and] significantly increas[ing] discovery costs for the parties". *Id.* Plaintiff argues that Defendants' claims regarding "undue burden", "spoliation", and "[Plaintiff's] production of its sales force discovery" are red herrings (*Id.* at 1-2) and maintains that the examples submitted with this application "fully support its claims" (*Id.* at 3). For these reasons, Plaintiff maintains that the Court should compel production of discovery from an additional 175 field sales force representatives. *See* Pl.'s Letter dated February 7, 2012 at 1-2.

In opposition, Defendants note that Plaintiff "has already received a vast amount of discovery" including "12 million pages of documents from 110 total custodians, more than 8.5 million of which are from the custodial files of...[the originally ordered] 73 sales

4

representatives". *See* Def.'s Opp'n Letter dated February 21, 2012 at 1.  Defendants "have spent over 4,200 hours working to identify, collect and facilitate production of responsive documents and other information" and Defendants' "outside counsel has spent over 86,000 hours reviewing and producing responsive documents".  *Id*. at 2.  Given that the "cost of this discovery has...[already] exceeded $10 million", an amount that "exceeds the expected value of the distribution contract at issue in this case...as calculated by [Plaintiff's] own financial group", Defendants argue that "[p]roducing documents from an additional 175 custodians would more than double the expense of discovery", that this would "necessarily extend the discovery period by many months", and that this "burden...would far outweigh any conceivable benefit". *Id*. at 1-2.  Defendants also maintain that "the additional discovery [Plaintiff] seeks is irrelevant and unlikely to lead to the discovery of admissible evidence" because "the millions of pages of sales force documents produced by [Defendants] do not support [Plaintiff's] monopolization claim" and "[i]t would be...unfair for [Defendants] to be required to produce a massive volume of additional sales force documents when [Plaintiff] is unable to comply...with its existing obligations to produce documents from a much smaller universe of people due to [Plaintiff's] destruction of documents".  *Id*. at 2.  Defendants assert that, should the Court grant Plaintiff's request, "it will take many months to collect and produce...[the additional discovery]" and such production "will likely also require the production of additional...[discovery from Plaintiff's] sales custodians to show the other side of the story", thereby adding "even more time to the current discovery schedule". *Id*. at 7-8.

     With respect to its claim that producing discovery from an additional 175 sales representatives is "unreasonable and overly burdensome", Defendants cite FED. R. CIV. P.

26(b)(2), *Bayer A.G. v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999), *Hiltabidel v. Uniontown Newspapers, Inc.*, 2010 WL 340741, at *4 (W.D. Pa. 2010), and *In re IBM Peripheral EDP Devices Antitrust Litigation*, 77 F.R.D. 39, 41-42 (N.D. Cal. 1997) for the proposition that courts may "limit discovery if the request is unreasonably cumulative or duplicative or the burden or expense of the proposed discovery outweighs its likely benefit" and argue that Plaintiff "should not be permitted to drain the pond and collect the fish from the bottom". *Id*. at 4. Defendants assert that "to produce an additional 175 custodians would require an estimated 140,000 hours of manpower costing roughly $15 million" and maintain that "the burdens of discovery far outweigh the benefit where, as is the case here, the total amount...[Plaintiff] believed it stood to gain is less than the total cost of discovery". *Id*.

With respect to their claim that the additional discovery is irrelevant and unlikely to lead to the discovery of admissible evidence, Defendants note that Plaintiff has stated that it "already has in its possession numerous...documents that purportedly support its contentions of unlawful foreclosure" and maintain that if this is true, "any additional...discovery would be redundant". *Id*. at 5. Defendants contend that Plaintiff "is not correct", however, because "[t]he anecdotal evidence [Plaintiff] has found of sales representatives trying to close deals is a far cry from what is required to show that [Plaintiff] was unlawfully foreclosed from selling Fragmin to hospitals". *Id*. Defendants argue that "[n]ot a single one of [Plaintiff's] self-identified and presumably best 12 examples supports its case...or is even relevant to its case" and, therefore, "[m]ore of the same will not aid the Court or ultimately a jury in assessing [Plaintiff's] claim". *Id*. at 6. Noting that Plaintiff "has not deposed a single hospital customer to substantiate any of its arguments about losing business due to [Defendants'] sales or contracting activities", Defendants maintain that

"[r]egardless of whether the Court accepts [Plaintiff's] contention that discovery has revealed numerous examples to support its claim or looks at the evidence and concludes that the examples [Plaintiff] has pulled from millions of pages of documents have no value to the case, there is...no reason to prolong the discovery process by many months, impose millions of dollars of additional expense on [Defendants], and require millions of pages to be produced from the files of 175 additional sales representatives".  *Id*.

With respect to their claim that it would be unfair to require additional production by Defendants while Plaintiff remains delinquent in its own discovery responses, Defendants assert that Plaintiff "has not preserved its own sales force files" – "the very discovery [Plaintiff] claims is essential from Defendants".  *Id*. at 7.  Citing *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 110-11 (E.D. Pa. 2005), *Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994), and *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 287 (E.D. Va. 2001) for the proposition that "a court has discretion to impose a variety of sanctions including suppression of evidence, an adverse evidentiary inference[,] or even the dismissal of a claim" upon a showing of spoliation, Defendants note that they are "still investigating the issue of spoliation of [Plaintiff's] files" based upon Plaintiff's representation that "no documents except call sheets are available from seven of the 48 Fragmin sales force custodians that [Defendants] requested" and based on the fact that "there are a number of gaps in the electronic files of others".  *Id*.  Moreover, Defendants contend that all of this is "particularly troubling because all of the Fragmin sales representatives whose data is missing were identified by [Plaintiff] in its Answers to Interrogatories as having information pertaining to [Plaintiff's] claims of foreclosure" and because "[t]he missing documents..., which amount to 15% of [Plaintiff's] sales discovery that

this Court...ordered [Plaintiff] to produce, shows that [Plaintiff] does not itself consider the sales force relevant to this lawsuit...or that [Plaintiff] has deleted documents and information it believes is relevant to [this] case".  *Id*.  Defendants argue that, under the circumstances, Plaintiff should be precluded from "obtaining documents from an additional 175...custodians".  *Id*.

### B. Plaintiff's application to compel Defendants to produce discovery from the final 3 field sales force representatives previously identified by Plaintiff

With this application, Plaintiff notes that the "Court entered an Order on March 24, 2011 requiring [Defendants] to produce discovery from seventy-five (75) of its field sales [force] representatives within a reasonable time of [Plaintiff's] identification of those employees".  *See* Pl.'s Letter dated March 15, 2012 at 1.  However, "to date...[Defendants have] only produced custodial documents from seventy-two (72) of its sales force custodians...and [have] indicated...that [they] refuse to produce documents for the additional three sales representatives".  *Id*.  Plaintiff maintains that it "identified the three additional sales representatives" on December 28, 2011 and when Defendants "had not produced any documents for those custodians...or communicated with [Plaintiff] with an explanation" by February 24, 2012, Plaintiff contacted Defendants and were advised on March 6, 2012 "that files for those individuals would not be produced".  *Id*. at 1-2.  Plaintiff argues that "the Court's November 2, 2011 Order" stated that Defendants were "to complete discovery by November 21 only for the individuals identified in Plaintiff's August 5, 2011 letter" and such "deadline did not apply to the individuals identified after August 5".  *Id*. at 2.  Further, Plaintiff argues that the Court did not limit "the time period within which [Plaintiff] was to identify the seventy-five (75) sales representatives" and did not relieve Defendants "of [their] obligation to comply with the March 24 Order", especially given

that "it was [Defendants'] failure to comply with the Court's March 24 Order in the first instance that necessitated the Court's subsequent Order". *Id*. For these reasons, Plaintiff contends that it "is entitled to the custodial files of those last three sales representatives of the initial set ordered by the Court" and requests that the Court compel said production. *Id*.

In opposition, Defendants acknowledge that the Court "allowed [Plaintiff] to obtain documents from up to seventy-five (75) individuals of its choosing and required [Defendants] to produce these documents within a reasonable time". *See* Def.'s Opp'n Letter dated March 26, 2012 at 8. Defendants state that Plaintiff "identified 50 individuals by letter on May 9, 2011 but did not name any others until it requested another 22 individuals on August 5, 2011...for a total of 72 sales custodians". *Id*. Further, "[i]n its August 5 Letter, [Plaintiff] claimed that it would supply the names of the last three custodians following the August 12, 2011 deposition of Dennis Urbaniak...but failed to do so during the months following the deposition". *Id*. Defendants note that "[t]he subject of supplying the additional three sales force names was not discussed at the October 19, 2011 hearing where the deadline for [Defendants] to complete sales force discovery was set at November 21, 2012". *Id*. Rather, "[it] was not until December 28, 2011, ...a month after the deadline for [Defendants] to complete production of these materials, that [Plaintiff] named the last three of the 75 custodians as part of its demand for additional sales force custodians beyond those the Court already permitted". *Id*. Defendants maintain that they "considered this request untimely and unreasonable" because they "had already released the team that had been in place to review sales force documents for production and would have to reassemble a team at great additional expense". *Id*. "Just as [Defendants were] obligated to produce these custodians in a reasonable time, so too was [Plaintiff] obligated to identify them in

9

a reasonable timeframe during this portion of the discovery schedule". *Id*. Citing FED. R. CIV. P. 26(b)(2)(C)(i, iii), Defendants maintain that "the request for documents from these three custodians amounts to an overbroad fishing expedition" and notes that because they have "disbanded [their] contracted attorney reviewers who were responsible for this area of discovery in November 2011, [they] would have to assemble and train a new team of reviewers at a significant additional expense". *Id*. at 9. As such, Defendants contend that the "Court should not condone [Plaintiff's] unwarranted delay in providing the last three names and should deny [Plaintiff's] request" as "unreasonable". *Id*. at 8-9.

**(C)** **Plaintiff's application to compel Defendants to produce discovery from 27 custodians that Plaintiff claims have documents responsive to its discovery requests**

With this application, Plaintiff notes that Defendants have "failed to produce discovery from twenty-seven (27) of its custodians who have documents responsive to [Plaintiff's] discovery requests" and lists those individuals together with their job titles. *See* Pl.'s Letter dated March 15, 2012 at 2. Plaintiff claims that "these custodians have documents directly related to sales, marketing, pricing, contracting strategy, and product management for Lovenox" which are "issues germane to the claims and defenses in this litigation". *Id*. at 3. Citing FED. R. CIV. P. 26(b)(1), Plaintiff argues that "discovery from these custodians is both relevant and reasonably calculated to lead to the discovery of admissible evidence" such that Defendants' "omission of the above custodians from its production is a serious discovery deficiency that must be corrected". *Id*. at 3-4. Referencing a sample of its discovery requests and Defendants' deficient responses, Plaintiff maintains that it "brought [these] discovery deficienc[ies] to [Defendants'] attention" on February 17, 2012 and February 24, 2012. *Id*. at 4-5. However, Defendants "stated

that they would not produce the files from any of the custodians" and failed to provide "an explanation for why the documents from those custodians were not responsive to [Plaintiff's] discovery requests". *Id*. Rather, Defendants asserted that they "had conducted reasonable research and responded adequately to [Plaintiff's] discovery requests" and stated "that it was time for discovery to end". *Id*. Contrary to Defendants' position, Plaintiff contends that Defendants have "an affirmative obligation to produce discovery from the above-named custodians" and requests that the Court compel said production. *Id*.

In opposition, Defendants note that on "July 26, 2011...[they] informed the Court and [Plaintiff] that [they] had substantially completed production of [their] marketing and contracting custodians, signifying that this aspect of our production was complete". *See* Def.'s Opp'n Letter dated March 26, 2012 at 9. However, "[d]espite having possession of that discovery for nearly seven months, [Plaintiff] waited until February 17, 2012 to request an additional 27 marketing and contracting custodians". *Id*. Citing *McBride v. Halliburton Co.*, 272 F.R.D. 235, 241 (D.D.C. 2011), Defendants maintain that "[t]he nature and timing of this request is simply abusive of the discovery process" and "courts have denied similar requests". *Id*. Defendants claim that they "gave a great deal of thought to where [they] needed to search for responsive documents" and "[u]ltimately...produced the custodial files of 32 senior brand and contracting managers...[who were] responsible for creating and executing [Defendants'] strategic decisions concerning its sales of Lovenox", with the "rationale for the selection of these individuals [being] to respond fully to [Plaintiff's] requests and produce responsive, non-duplicative documents covering the entire period at issue". *Id*. "[Plaintiff] now claims that it is entitled to an additional 27 custodians because their names appear on [Defendants'] organizational charts over time". *Id*.

11

Citing *Jones v. Nat'l Council of YMCA*, 2011 U.S. Dist. LEXIS 123008, at *5 (N.D. Ill. 2011), Defendants contend that "[a]dditional marketing and contracting custodians at the level and amount requested by [Plaintiff] is unreasonably cumulative, overbroad and would be of minimal utility in light of the vast number of custodians and amount of materials produced to date". *Id.* In comparison, Defendants assert that "[Plaintiff] has not produced the files of every product manager or other similarly situated level of employee working on Fragmin...as...[Plaintiff] now expects [Defendants] to do". *Id.* at 9-10. For these reasons, Defendants contend that "the Court should deny [Plaintiff's] request that [Defendants] be required to produce documents for an additional 27 marketing and contracting custodians". *Id.* at 10.

## III.    LEGAL STANDARDS

Pursuant to FED. R. CIV. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter" and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence". Notably, "[t]he party resisting discovery has the burden of clarifying and explaining its objections and to provide support therefor". *Tele-Radio Systems, Ltd. v. De Forest Electronics, Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981); *see also Gulf Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 916-17 (E.D. Pa. 1979); *Robinson v. Magovern*, 83 F.R.D. 79, 85 (E.D. Pa. 1979).

The Court also notes that pursuant to FED. R. CIV. P. 26(b)(2)(C), it "must limit the

12

frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i)   the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii)  the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. *See Barnes Found. v. Twp. of Lower Merion*, 1996 WL 653114, at *1 (E.D. Pa. 1996). Importantly, "Courts have construed this rule liberally, creating a broad vista for discovery". *Takacs v. Union County*, 2009 WL 3048471, at *1 (D.N.J. 2009)(*citing Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981)); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Evans v. Employee Benefit Plan*, 2006 WL 1644818, at *4 (D.N.J. 2006). However, "a discovery request may be denied if, after assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, the District Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery". *Takacs*, 2009 WL 3048471, at

*1; *see also Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). "The purpose of this rule of proportionality is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry". *Takacs*, 2009 WL 3048471, at *1 (*citing Bowers v. National Collegiate Athletic Assoc.*, 2008 WL 1757929, at *4 (D.N.J. 2008)); *see also Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989); *Public Service Group, Inc. v. Philadelphia Elec. Co.*, 130 F.R.D. 543, 551 (D.N.J. 1990).

## IV.   CONCLUSIONS

### A.   Plaintiff's applications to compel Defendants to produce discovery from an additional 175 field sales force representatives and to produce discovery from an additional 27 custodians that Plaintiff claims have documents responsive to its discovery requests

With respect to Plaintiff's application to compel Defendants to produce discovery from an additional 175 field sales force representatives, initially the Court notes that Defendants were previously compelled to produce field sales force discovery for seventy-five (75) individuals (*see* dkt. entry no. 141) and that "more than 8.5 million...[pages of related documents]" have been produced in response to that Order. *See* Def.'s Opp'n Letter dated February 21, 2012 at 1. To date, Defendants have produced "over 12 million [total] pages of documents" at a cost "exceeding $10 million". *Id.* The Court also notes that Plaintiff contends that the discovery produced to date has "revealed numerous – possibly thousands [of] – ...documents relevant to and supportive of [Plaintiff's] allegations". *See* Pl.'s Letter dated February 7, 2012 at 2. Having reviewed the examples of Defendants' alleged antitrust violations cited by Plaintiff, the Court finds that Plaintiff has failed to demonstrate that discovery from an additional 175 of Defendants'

14

field sales force representatives would be relevant and likely to lead to the discovery of admissible evidence pursuant to FED. R. CIV. P. 26(b)(1). However, even if such additional discovery is relevant and likely to lead to the discovery of admissible evidence, the Court finds that "the discovery sought is unreasonably cumulative or duplicative" and that "the burden or expense of the proposed discovery outweighs its likely benefit" pursuant to FED. R. CIV. P. 26(b)(2)(C).

Although Plaintiff claims that its Exhibit C demonstrates that Defendants' sales representatives "executed the directives of their superiors to use the Lovenox contract as a marketing tool to thwart the competition...and...to threaten customers with the certainty of price penalties if they did not abide by the 90% monopoly-share condition of the Lovenox contract" (Pl.'s Letter dated February 7, 2012 at Ex. C), the Court finds that the examples presented fail to adequately demonstrate the necessity for the additional discovery sought (*see* Def.'s Opp'n Letter dated February 21, 2012 at 5-6 & Exhs. 5 & 11). Several examples cited by Plaintiff fail to include enough information to identify the customer whom, or facility where, Plaintiff was allegedly foreclosed from competition. *See* Pl.'s Letter dated February 7, 2012 at Ex. C, SA-000017223, SA-000017224, SA-001299377, SA-001299380; *see also* Def.'s Opp'n Letter dated February 21, 2012 at 6. The other examples cited by Plaintiff (*see* Pl.'s Letter dated February 7, 2012 at Ex. C, SA-004210133, SA-100553017, SA-100553018) include Burke Rehabilitation Center – a facility where the Pharmacy and Therapeutics Committee recommended that "Lovenox be the only formulary LMWH [because] licensed indications for Lovenox exceed those possessed by Fragmin" (Def.'s Opp'n Letter dated February 21, 2012 at Ex. 11; *see also id*. at 5-6) – and University Community Hospital – a facility that switched from Lovenox to Fragmin

15

or Arixtra (*see* Def.'s Opp'n Letter dated February 21, 2012 at Ex. 5; *see also id*. at 5).  Under these circumstances, the Court finds that Plaintiff's Exhibit C fails to adequately support the proposition that additional discovery of Defendants' field sales force will yield relevant information or lead to the discovery of admissible evidence.

Although Plaintiff claims that its Exhibit D demonstrates that Defendants' sales force executed its "marketing team's directives to assert claims of Lovenox' superiority and engage in a campaign to invoke in healthcare providers fear, uncertainty, and doubt about other LMWHs...in an effort to enforce the Lovenox contract and ensure that customers continued to pay Lovenox' premium price" (Pl.'s Letter dated February 7, 2012 at Ex. D), the Court finds that the examples presented fail to adequately demonstrate the necessity for the additional discovery sought (*see* Def.'s Opp'n Letter dated February 21, 2012 at 5-6 & Exhs. 4, 6 & 13).  Again, several examples cited by Plaintiff fail to include enough information to identify the customer whom, or facility where, Plaintiff was allegedly foreclosed from competition.  *See* Pl.'s Letter dated February 7, 2012 at Ex. D, SA-100282500, SA-100282517, SA-004798967, SA-004798968, SA-003526938, SA-000035997 thru SA-000036001; *see also* Def.'s Opp'n Letter dated February 21, 2012 at 5-6.  The other examples cited by Plaintiff (*see* Pl.'s Letter dated February 7, 2012 at Ex. D, SA-000027440, SA-000027441, SA-002369001 thru SA-002369003, SA-100282500, SA-100282517, SA-004798967, SA-004798968) include Wellmont Health System – a facility that switched from Lovenox to Fragmin or Arixtra (*see* Def.'s Opp'n Letter dated February 21, 2012 at Ex. 4; *see also id*. at 5) – PharMerica – a "pharmacy service provider that [was] not subject to the Lovenox Discount Program complained of by [Plaintiff]" (*see* Def.'s Opp'n Letter dated February 21, 2012 at 6; *see also id*. at Ex. 13) – and Citrus Memorial Hospital

16

– a facility that switched from Lovenox to Fragmin or Arixtra (*see* Def.'s Opp'n Letter dated February 21, 2012 at Ex. 6; *see also id*. at 5).  Under these circumstances, the Court finds that Plaintiff's Exhibit D fails to support the proposition that additional discovery of Defendants' field sales force will yield relevant information or lead to the discovery of admissible evidence.

Finally, although Plaintiff claims that its Exhibit E identifies "specific customers whose purchasing behavior has been influenced by the restrictive conditions of the Lovenox contract and the conduct of [Defendants'] sales force...including customers who have...strictly limited their purchase of other LMWHs...or prohibited altogether the use of other LMWHs...because of the Lovenox contract" (Pl.'s Letter dated February 7, 2012 at Ex. E), the Court finds that the examples presented fail to adequately demonstrate the necessity for the additional discovery sought (*see* Def.'s Opp'n Letter dated February 21, 2012 at 5-6 & Exhs. 7, 9, 12 & 13).  Several examples cited by Plaintiff fail to include enough information to identify the customer whom, or facility where, Plaintiff was allegedly foreclosed from competition.  *See* Pl.'s Letter dated February 7, 2012 at Ex. E, SA-001299276, SA-001299277; *see also* Def.'s Opp'n Letter dated February 21, 2012 at 6.  The other examples cited by Plaintiff (*see* Pl.'s Letter dated February 7, 2012 at Ex. E, SA-005435335, SA-003464184, SA-004191875, SA-004191879, SA-001299276, SA-001299277) include Omnicare – a "pharmacy service provider that [was] not subject to the Lovenox Discount Program complained of by [Plaintiff]" (*see* Def.'s Opp'n Letter dated February 21, 2012 at 6; *see also id*. at Ex. 13) – University Health Services – a facility that had Fragmin on formulary (*see* Def.'s Opp'n Letter dated February 21, 2012 at Ex. 9; *see also id*. at 5) – Stamford Hospital – a facility that switched from Lovenox to Fragmin or Arixtra (*see* Def.'s Opp'n Letter dated February 21, 2012 at Ex. 7; *see also id*. at 5) – and Swedish Health System –

a facility that "used Fragmin at one time but returned to Lovenox because of the breadth of indications, the breadth of information and clinical data backing Lovenox" and "never relied on the marketing messages of sales representatives in making formulary decisions" (*see* Def.'s Opp'n Letter dated February 21, 2012 at 6; *see also id*. at Ex. 12).  Under these circumstances, the Court finds that Plaintiff's Exhibit E fails to support the proposition that additional discovery of Defendants' field sales force will yield relevant information or lead to the discovery of admissible evidence.

Even if the Court were persuaded that additional discovery of Defendants' field sales force was likely to yield relevant information or would lead to the discovery of admissible evidence, the Court finds that *in toto*, "the burden [and] expense of the proposed discovery outweighs its likely benefit".  FED. R. CIV. P. 26(b)(2)(C).  Given that Plaintiff has acknowledged that discovery to date has "revealed numerous – possibly thousands [of] – ...documents relevant to and supportive of [Plaintiff's] allegations" (Pl.'s Letter dated February 7, 2012 at 2), the fact that Defendants represent that discovery costs related to this matter have already exceeded "$10 million" (Def.'s Opp'n Letter dated February 21, 2012 at 1), and that additional discovery of Defendants' field sales force representatives "will likely also require the production of additional...[discovery of Plaintiff's field sales force representatives]" (*Id*. at 7), and having assessed "the needs of [this] case, the amount in controversy, the parties' resources, the importance of the issues at stake in [this] action, and the importance of the [requested] discovery in resolving the issues", the Court finds that there is a "likelihood that the resulting benefits...[of additional field sales discovery] would be outweighed by the burden [and] expenses imposed as a consequence of the proposed discovery".  *Takacs*, 2009 WL 3048471, at *1; *see also Bayer AG*,

18

173 F.3d at 191; FED. R. CIV. P. 26(b)(2)(C).

Similarly, with respect to Plaintiff's application to compel Defendants to produce discovery from an additional 27 custodians that Plaintiff claims have documents responsive to its discovery requests, the Court notes that Defendants previously produced "the custodial files of 32 senior brand and contracting managers".  *See* Def.'s Opp'n Letter dated March 26, 2012 at 9. Having reviewed the Plaintiff's sample discovery requests and Defendants' responses which Plaintiff claims are deficient, in addition to Plaintiff's list of the 27 custodians together with their job titles (*see* Pl.'s Letter dated March 15, 2012 at 2-4), and given that Defendants' "rationale for the selection of...[the previously produced 32 custodial files] was to respond fully to [Plaintiff's] requests and produce responsive, non-duplicative documents covering the entire time period at issue" (Def.'s Opp'n Letter dated March 26, 2012 at 9), the Court finds that Defendants have sufficiently demonstrated that the additional production requested by Plaintiff is "unreasonably cumulative or duplicative" and that "the burden or expense of the proposed discovery outweighs its likely benefit" (FED. R. CIV. P. 26(b)(2)(C)(i, iii)).

However, if Plaintiff can identify specific field sales force representatives and/or custodians from whom discovery is sought and articulate a particularized need for such discovery, the Court will consider such request for additional discovery on a case-by-case basis upon submission of an appropriate application after Plaintiff has complied with its meet and confer obligations pursuant to FED. R. CIV. P. 37(a)(1) and L. CIV. R. 37.1.

**B.    Plaintiff's application to compel Defendants to produce discovery from the final 3 field sales force representatives previously identified by Plaintiff**

With respect to Plaintiff's application to compel Defendants to produce discovery from

the final 3 of the original Court-ordered field sales force representatives identified by Plaintiff, the Court notes that a Discovery Order was entered on March 24, 2011 granting "Plaintiff's motion to compel discovery" from up to "seventy-five (75)" of Defendants' field sales force representatives. *See* dkt. entry no. 141. Although the Discovery Order did not provide a time within which Plaintiff would identify those 75 field sales force representatives, Defendants were required "to produce the requested discovery...within a reasonable time". *Id*. The Court also notes that a Discovery and Amended Scheduling Order was entered on November 2, 2011, therein requiring Defendants to "complete the production of discovery for the [field sales force representatives] identified in Plaintiff's August 5, 2011 letter" by November 21, 2011 and setting March 30, 2012 as the date for the completion of fact discovery. *See* dkt. entry no. 157. While acknowledging Defendants' position that production of "documents from these three custodians amounts to an overbroad fishing expedition" and would result in "significant additional expense" (Def.'s Opp'n Letter dated March 26, 2012 at 9), and despite the fact that Plaintiff has failed "to provide any explanation as to why...[it] waited until December 28[, 2011] to identify the last three [field] sales force representatives" (*Id*. at 8), the Court finds that neither the March 24, 2011 Discovery Order nor the November 2, 2011 Discovery and Amended Scheduling Order set a deadline by which Plaintiff was to identify all seventy-five (75) field sales force representatives. Given that Plaintiff identified the final three (3) field sales force representatives well before the March 30, 2012 date for the completion of fact discovery, the Court finds Plaintiff's application is not unreasonable and will compel Defendants to produce the requested discovery.

**V.   ORDER**

Having considered the papers submitted and the opposition thereto together, and for the

20

reasons set forth on the record and above;

**IT IS** on this 12th day of April, 2012,

**ORDERED** that Plaintiff's application to compel Defendants to produce discovery from an additional 175 field sales force representatives is **DENIED** without prejudice consistent with the findings above; and it is further

**ORDERED** that Plaintiff's application to compel Defendants to produce discovery from 27 custodians that Plaintiff claims have documents responsive to its discovery requests is **DENIED** without prejudice consistent with the findings above; and it is further

**ORDERED** that Plaintiff's application to compel Defendants to produce discovery from the remaining 3 field sales force representatives is **GRANTED** and Defendants shall produce same by **April 30, 2012**.

                                        s/ *Douglas E. Arpert*
                                        **DOUGLAS E. ARPERT**
                                        **UNITED STATES MAGISTRATE JUDGE**