**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| EISAI INC., | : | **Civil Action No.: 08-4168 (MLC)** |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| SANOFI-AVENTIS U.S., LLC, et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**ARPERT, U.S.M.J**

**I.      INTRODUCTION**

This matter comes before the Court on the application of Plaintiff Eisai Inc. ("Plaintiff

or "Eisai") to modify the Discovery Confidentiality Order ("Confidentiality Order") in this case.

Defendants Sanofi-Aventis U.S., LLC and Sanofi-Aventis, U.S., Inc. (collectively, "Defendants

or "Sanofi") oppose Plaintiff's application.  Also before the Court is Plaintiff's application to

compel Defendants to provide full and complete answers to Plaintiff's Fourth Set of

Interrogatories ("Interrogatories").  Defendants oppose Plaintiff's application.

On April 2, 2012, the Court conducted a telephone status conference on the record during

which oral argument was entertained.  Because the facts of this case are well known to the

Parties, and in light of the numerous Opinions and Orders previously issued by this Court, the

Court will simply recite the facts relevant to this application and incorporates the facts set forth

in its previous Opinions and Orders.

For the reasons stated on the record and herein, Plaintiff's application to modify the

Confidentiality Order is **DENIED**.  Further, Plaintiff's application to compel Defendants to

provide full and complete answers to Plaintiff's Fourth Set of Interrogatories is **DENIED** without prejudice.

Because the facts of this case are well known to the Parties, and in light of the numerous Opinions and Orders previously issued by this Court, the Court will simply recite the facts relevant to this application and incorporates the facts set forth in its previous Opinions and Orders.

## II.   PLAINTIFF'S APPLICATIONS

### A.   <u>Plaintiff's application to modify the Confidentiality Order</u>

With this application, Plaintiff claims that the "Confidentiality Order that the Court entered in 2009 to assist with discovery has...slowed" this matter down significantly and proposes a "revised [Confidentiality] Order...which provides umbrella protection for every single document produced by the parties" while "also facilitat[ing] discovery by allowing the parties' documents to be shared with those individuals that the producing party intends to depose in this case...provided that the prospective deponent agrees to abide by the Confidentiality Order". *See* Pl.'s Br. dated August 12, 2011 at 1. Plaintiff maintains that "[t]his modification safeguards any legitimate concerns the parties have about the use of commercially sensitive information outside this litigation or disclosures about other products not relevant to this case" because Plaintiff "does not want to compromise the security of its own or [Defendants'] commercially sensitive information" and "does...[not] seek any changes with regard to the protections for documents produced by third parties". *Id*. at 1-2.

Plaintiff argues that the Confidentiality Order should be modified for three (3) reasons. *Id*. at 7-12. First, Plaintiff claims that "[Defendants'] mass designation of millions of pages of

redacted documents as 'Highly Confidential' violates the Confidentiality Order's good faith requirement". *Id*. at 7.  Citing *Team Play, Inc. v. Boyer*, 2005 WL 256476, at *1 (N.D. Ill. 2005) and *THK Am., Inc. v. NSK Co., Ltd.*, 157 F.R.D. 637, 643-44 (N.D. Ill. 1993), Plaintiff argues that "[Defendants'] blanket designation of more than two million pages of documents as 'Highly Confidential – Outside/Limited Counsel Only Information' is simply unreasonable" and "render[s] the current [Confidentiality] Order virtually meaningless", especially given "the fact that [Defendants'] documents were also redacted".  *Id*. at 7-9.  Plaintiff contends that "[t]he Court's broad power to modify...[the Confidentiality] Order allows it to completely remove the 'Highly Confidential' designation from this case...if it sees fit".  *Id*. at 8-9.  Second, Plaintiff claims that the "Confidentiality Order should not block [it] from using relevant documents in its preparation and examination of those witnesses that [Defendants] want to depose in this matter". *Id*. at 9.  Plaintiff argues that it "must be free to show documents to designated deponents who agree to abide by the [Confidentiality] Order" after Defendants issue deposition notices and the revised Confidentiality Order will allow "[Plaintiff]...to use documents with witnesses" in this fashion.  *Id*. at 10.  Third, Plaintiff claims that the Court "should modify the [Confidentiality] Order to allow discovery to proceed efficiently while protecting the parties' legitimate commercial privacy interests".  *Id*.  Specifically, Plaintiff acknowledges that "[a]ll information pertaining to products not at issue here should maintain its confidential status" and agrees that "[a]ll post-2009 documents can enjoy umbrella designation as 'Highly Confidential'" in order to "put to rest possible concerns...[by Defendants] that [Plaintiff] is angling for commercially sensitive information that has any current value".  *Id*. at 10-12.  However, Plaintiff maintains that "[a]ll pre-2010 documents that the parties have produced should lose their 'Highly Confidential'

3

designation and be available for use in discovery with witnesses who agree to abide by the [revised] Confidentiality Order". *Id*. at 11.   Given the "entry of generic enoxaparin to the relevant market" and the fact that "the 'Highly Confidential' designation has become...a barrier to the discovery process", Plaintiff argues that "there is nothing in either party's documents related to Lovenox or Fragmin or...[the documents of] any...competitor that remains commercially sensitive so as to satisfy the 'good cause' requirement for a protective order".   *Id*. However, "[t]o prevent any unfair advantage", Plaintiff maintains that "both parties (but not third parties) should presumptively lose their ability to [assert the 'Highly Confidential'] designation for pre-2010 documents" and "should only enjoy that privilege subject to prior approval by the Court...for truly exceptional information meriting such protection".   *Id*.   For these reasons, Plaintiff requests that the Court grant its application to modify the Confidentiality Order and enter the proposed revised Confidentiality Order.   *Id*.

       In   opposition,   Defendants   maintain   that   Plaintiff   has   "fail[ed]   to   establish   that any...change...[to the Confidentiality Order] is warranted by a balancing of the factors set forth in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994)" especially given that the Confidentiality Order "was extensively negotiated between the parties in advance of discovery in this lawsuit and relied upon by [Defendants] in making its substantial productions in response to [Plaintiff's discovery] requests".   *See* Def.'s Opp'n Br. dated August 23, 2011 at 1.   Given the allegations in Plaintiff's Complaint, Defendants assert that "[d]iscovery in this matter necessarily involves the extensive exchange of proprietary and commercially-sensitive information among competitors".   *Id*. at 2.   "[T]he parties recognized the need for a discovery confidentiality order" and "[a]fter roughly two-and-one half months...of negotiations[,]...agreed to a detailed, two-tiered

structure to better serve their respective competitive interests". *Id*. at 3.   Specifically, the Confidentiality Order that was agreed upon and is currently in place "requires that confidentiality designations be made with a reasonable, good faith belief that the information constitutes 'Confidential' or 'Highly Confidential – Outside/Limited Counsel Only' material" and "expressly provides a mechanism for a party to raise disputes concerning a confidentiality designation". *Id*.   Defendants also note that with respect to witnesses, the Confidentiality Order "provides that 'Confidential' documents may be disclosed to any deponent who was involved in the subject matter described in the information or item...or any person counsel has a good faith basis to believe authored or previously received the material" and "provides for disclosure of 'Highly Confidential' documents to any person counsel have a good faith basis to believe authored or previously received the material". *Id*. at 3-4.   Further, the Confidentiality Order "contemplates instances where disclosure may be appropriate to a deponent who is not otherwise authorized to receive Protected Material and contains a process for disclosure of such information", "does not prevent counsel from examining a witness to determine whether he or she has prior knowledge of Protected Material...provided such examination is in a manner that does not disclose the details of the Protected Material", and permits "internal counsel...[to] see either 'Confidential' or 'Highly Confidential' documents". *Id*. at 4.   Finally, Defendants note that following the Court's entry of the Confidentiality Order, "two non-parties...agreed to be bound by the Confidentiality Order, including its definitions and designations, through the September 23, 2009 Supplemental Discovery Confidentiality Order...and the May 18, 2011 Second Supplemental Discovery Confidentiality Order". *Id*. at 4-5.

Defendants argue that pursuant to *Pansy*, 23 F.3d at 790, Plaintiff has failed "to establish

any legitimate need for a modification of the Confidentiality Order" given that "[Defendants] made [their] confidentiality designations in good faith" despite the volume of such designations. *Id*. at 7. Citing *Team Play, Inc. v. Boyer*, 2005 U.S. Dist. LEXIS 3968, at *4 (N.D. Ill. 2005), *THK Am., Inc. v. NSK Co.*, Ltd., 157 F.R.D. 637, 645-47 (N.D. Ill. 1993), and the MANUAL FOR COMPLEX LITIG. (FOURTH) § 30.2 (2010), Defendants maintain that "the sheer percentage of produced documents designated as 'Highly Confidential' is insufficient to establish a need for a modification of the Confidentiality Order" given that "this is an antitrust litigation between competitors...[and] there can be no surprise that a substantial portion of the documents produced contain highly sensitive and proprietary information...[such] that additional precautions are necessary to facilitate that production". *Id*. at 7-9. "Indeed, [Defendants'] position that these types of materials are commercially sensitive is supported by the designations made by third-party competitors who have made similar productions in this lawsuit" and "illustrate that other participants in the industry view these materials as containing highly sensitive information". *Id*. at 8. Unlike the Illinois cases cited by Plaintiff, Defendants contend that there is no issue regarding "the parties...[having an] opportunity to consider critical information necessary to evaluate the litigation" because "the 'Highly Confidential' designation in this case allows in-house counsel to see such documents". *Id*. at 9.

Further, Defendants argue that "discovery has not stalled", "there is no legitimate purpose for [Plaintiff] to prepare its witnesses with [Defendants'] highly sensitive competitive information when they did not author or previously receive that information", and "the entry of a generic version of Lovenox has not reduced the need for protection under the Confidentiality Order". *Id*. at 7. With respect to the pace of discovery, Defendants claim that the

6

"Confidentiality Order has not created any unworkable obstacles to the efficient and prompt continuation of discovery in this matter" and that standstills "arose only when [Plaintiff] conditioned the production of its fact witnesses on the re-designation of...'Highly Confidential' documents". *Id.* at 10.  Defendants maintain that Plaintiff's assertion that it is "too difficult to identify documents when [Defendants have] designated millions of pages 'Highly Confidential'...is baseless" given that Plaintiff "cannot possibly show millions of documents to any of its witnesses" and given that Plaintiff "can identify those documents" or "categories of documents that it believes Defendants have erroneously designated 'Highly Confidential'" and "request that [Defendants] de-designate them or grant permission for [Plaintiff] to treat them as 'Confidential'". *Id.*

With respect to the preparation of witnesses, Defendants cite *Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D. Pa. 1993), *In re Neurontin Antitrust Litig.*, 2011 U.S. Dist. LEXIS 6977, at *38-40 (D.N.J. 2011), and *In re Chassen v. Fid. Nat'l Title Ins. Co.*, 2010 U.S. Dist. LEXIS 141852, at *4-5 (D.N.J. 2010) for the proposition that "there is no reasonable basis to contend that a fact witness needs to prepare for deposition by learning from counsel the highly sensitive business practices of a competitor" given that "[t]his District recognizes that depositions operate to memorialize and freeze a witness's testimony at an early stage of the proceeding...before the witness's recollection of the events at issue either has faded or has been altered by intervening events, other discovery, or the helpful suggestions of lawyers". *Id.* at 11. "[P]ermitting all deponents and potential deponents access to [Defendants'] proprietary information, including its pricing data and strategies, exposes [Defendants] to significant, unnecessary harm...[with respect] to its competitive business strategies and third-party

relationships". *Id.* Citing *Ball Mem'l Hosp., Inc. v. Mut. Hops. Ins., Inc.*, 784 F.2d 1325, 1346 (7th Cir. 1986) and *Blanchard and Co. v. Barrick Gold Corp.*, 2004 U.S. Dist. LEXIS 5719, at *42-43 (E.D. La. 2004), Defendants argue that "[c]ourts have routinely recognized the need to protect such disclosures[,]...particularly where pricing data is exchanged between competitors", such that "[P]laintiff's purported need to conduct its investigation outside of...[D]efendants' glare and without...[D]efendants knowing its every move may be outweighed by the need to preserve proprietary confidential information from competitors". *Id.* at 11-12.

With respect to Defendants' contention that the entry of a generic version of Lovenox has "drastically reduced the need for judicial protection of either party's documents" is "simply not true". *Id.* at 12. Defendants argue that "Fragmin and Lovenox remain competitors in the anticoagulant market" and that "the designated confidential information portrays the parties' respective strategies for marketing pharmaceutical products to, and contracting with, hospital customers". *Id.* at 12-13. Further, Defendants argue that Plaintiff's "proposed modifications to the...Confidentiality Order would not only permit [Plaintiff's] witnesses to review [Defendants'] highly sensitive business materials, but would also permit all of [Plaintiff's] executives to review such materials". *Id.* at 13.

Defendants also argue that "a balancing of the *Pansy* factors", in addition to "the reliance by the original parties", "weighs in favor of maintaining the current Confidentiality Order". *Id.* at 13. Citing *Pansy*, 23 F.3d at 790, *Charlie H. v. Whitman*, 213 F.R.D. 240, 245 (D.N.J. 2003), *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995), and *In re Gabapentin Patent Litig.*, 213 F. Supp. 2d 653, 666-67 (D.N.J. 2004), Defendants maintain that "[Plaintiff] has not advanced any legitimate reason for any modification" while "[Defendants] and third parties have

produced an immense amount of documents in reliance on the Confidentiality Order and Supplemental Orders" such that "[t]o significantly and drastically modify the provisions of the Confidentiality Order at this point would unduly prejudice [Defendants] and significantly harm [their] legitimate interests in maintaining [their] trade secrets and confidential business information". *Id*. at 13-14.   Defendants contend that "[Plaintiff's] argument that [Defendants] will still be protected by [Plaintiff's] proposed modifications because [Plaintiff's] witnesses will agree to be bound by the...[revised] Confidentiality Order misses the point" and is "of no comfort" because "[t]here is no legitimate purpose to showing a fact witness (and employee at a competitor company) documents where that witness has no personal knowledge either of the document or its purported content".  *Id*. at 14-15.   Defendants also maintain that Plaintiff's proposed modifications unfairly "seek to shift the entire cost and burden of re-reviewing and defending each and every 'Highly Confidential' document onto [Defendants] without any identification of particular documents or categories of documents as to which [Plaintiff] has specific objections to the designations".  *Id*. at 15-16.   Finally, pursuant to L. Civ. R. 5.3(b)(1), *Ball Mem'l Hosp.*, 784 F.2d at 1346, n.2, and the Manual for Complex Litig. at § 11.432, Defendants note that "this is a private action between private parties" such that, although "the public has an interest in documents filed with the Court, that same interest does not exist for discovery produced in...[discovery]".  *Id*. at 16-17.

"Based on the parties' reliance on the Confidentiality Order and a balancing of the *Pansy* factors", and pursuant to *Everest Nat'l Ins. Co. v. Sutton*, 2010 U.S. Dist. LEXIS 115661, at *15-20 (D.N.J. 2010), Defendants argue that "good cause exists to uphold the Confidentiality Order" and that "[t]his result is consistent with other courts that have rejected modifications to

confidentiality orders where the requested modification did not serve any public interest, operated to infringe upon a private interest in maintaining proprietary business information, and only served a private interest in litigation". *Id*. at 17.

### B.   Plaintiff's application to compel Defendants to provide full and complete answers to Plaintiff's Interrogatories

With this application, Plaintiff notes that Defendants have "refused to answer (12) of the fourteen (14) interrogatories [Plaintiff] propounded...in its Fourth Set of Interrogatories". *See* Pl.'s Letter dated March 15, 2012 at 5.  During meet and confer sessions on October 13, 2011 and March 6, 2012, Plaintiff maintains that Defendants specified their objections. *Id*. at 5-6. Specifically, Defendants claim that Interrogatory Nos. 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 13 and 14 "seek information that is irrelevant to the claims raised in [Plaintiff's] Complaint", that Interrogatory Nos. 10-14 "exceed the 25 total interrogatories that [Plaintiff] is permitted to propound on [Defendants]", and that Interrogatory Nos. 1, 5, 6, 7, 9, 10, 11 and 12 are "duplicative of discovery already sought from and being produced by [Defendants]". *Id*. at 6-8. Plaintiff maintains that there "is no legally-sound basis for [Defendants'] refusal to respond to [Plaintiff's] discovery requests" for the specific reasons set forth more fully in its March 15, 2012 letter. *Id*. at 5-8.

In opposition, Defendants note that Plaintiff "has known of [Defendants'] objections to [Plaintiff's] Fourth Set of Interrogatories since...June [2011]" and maintains that Plaintiff "should have raised this issue long before now". *See* Def.'s Opp'n Letter dated March 26, 2012 at 10.   However, Defendants "stand by [their] objections", contending that Plaintiff's Interrogatories "are improper" and "call for irrelevant information". *Id*.  Noting that with respect

to Defendants' sales representatives, Plaintiff's Complaint only alleges that "they provided misleading information to customers and threatened to withhold funding from customers", Defendants claim that Plaintiff's Interrogatories "seek information well beyond these two limited categories" that is "irrelevant to the antitrust claims pled". *Id.* Defendants argue that Plaintiff's Interrogatories are "overbroad and extremely burdensome because they seek information regarding the activities of [Defendants'] entire sales and marketing team for over a 13 year period" and, further, note that "Plaintiff refused[,] and the Court did not compel [Plaintiff,] to make additional efforts to interview or further inquire of its sales force beyond the information already known to [Plaintiff]". *Id.* at 10-11. Finally, Defendants contend that "[Plaintiff] has not shown that there would be any value in [Defendants] providing the answers [Plaintiff] seeks" given that Plaintiff "has not uncovered any evidence that a customer refused to put Fragmin on formulary as a result of conduct by...[any of Defendants' sales representatives]". *Id.* at 11. For these reasons, Defendants argue that the Court should deny Plaintiff's application. *Id.*

## III.   LEGAL STANDARDS

With respect to Plaintiff's application to modify the Discovery Confidentiality Order, the Court notes that Federal Rule of Civil Procedure 26(c)(1) permits "[a] party or any person from whom discovery is sought...[to] move for a protective order" and authorizes the Court to enter such an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense". FED. R. CIV. P. 26(c)(1). The Court also notes "District Courts retain the power to modify or vacate confidentiality orders that [they have] entered" and "when a party seeks to modify an order of confidentiality, the party must come forward with a reason to modify the order". *Charlie H. v. Whitman*, 213 F.R.D. 240, 245 (D.N.J. 2003); *see also Pansy v.*

*Borough of Stroudsburg*, 23 F.3d 772, 784-85, 790 (3d Cir. 1994).  "Once the Court is satisfied

that a reason exists to modify the order, the District Court must then use the same balancing test

that is used in determining whether to grant such orders in the first instance, with one difference:

one of the factors the court should consider in determining whether to modify the order is the

reliance by the original parties on the confidentiality order".  *Id*.; *see also Pansy,* 23 F.3d at 790.

However, the Court notes that "the original parties' reliance on the protective order or order of

confidentiality...is not outcome determinative...but simply...one of the factors the Court is to

consider in making its modification determination".  *Id*.; *see also Pansy,* 23 F.3d at 790.

The test used to determine whether a confidentiality order should be entered requires

"[the] party seeking...[the] order...[to] demonstrate that 'good cause' exists for the protection

of...[certain discovery] material".  *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir.

1995); *see also* Fed. R. Civ. P. 26(c); *Pansy*, 23 F.3d at 786.  "'Good cause' is established when

it is specifically demonstrated that disclosure will cause a clearly defined and serious injury"

although "[b]road allegations of harm, unsubstantiated by specific examples, ...will not suffice".

*Id*.  Several factors that "may be considered in evaluating whether 'good cause' exists", although

they "are neither mandatory nor exhaustive", include:

> (1) whether disclosure will violate any privacy interests;
> (2) whether the information is being sought for a legitimate
> purpose or for an improper purpose;
> (3) whether disclosure of the information will cause a party
> embarrassment;
> (4) whether confidentiality is being sought over information
> important to public health and safety;
> (5) whether the sharing of information among litigants will
> promote fairness and efficiency;
> (6) whether a party benefitting from the order of confidentiality is a
> public entity or official; and

(7) whether the case involves issues important to the public.

*Id*.; *see also Pansy*, 23 F.3d at 787-91.  "Circumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and safety, and when the sharing of information among litigants would promote fairness and efficiency".  *Leap Sys. v. Moneytrax, Inc.*, 638 F.3d 216, 222 (3d Cir. 2011).

"[W]here there is an umbrella protective order[,] the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order".  *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007); *see also Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986).  However, this "does not mean...that the party seeking the protective order must necessarily demonstrate to the court in the first instance on a document-by-document basis that each item should be protected".  *Cippollone*, 785 F.2d at 1122.  "It is equally consistent with the proper allocation of evidentiary burdens for the court to construct a broad 'umbrella' protective order upon a threshold claim by one party (the movant) of good cause" and "[u]nder this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential".  *Id*.  "After delivered under this umbrella order, the opposing party could indicate precisely which documents it believed not to be confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents".  *Id*.  "The burden of proof would be at all times on the movant; only the burden of raising the issue with respect to certain documents would shift to the other party".  *Id*.  Nevertheless, "[t]here may be cases in which the document-by-document approach adopted by the district court, which deters over-designation of confidentiality and imposes heavier costs on parties making the

13

confidentiality designation, will be preferable". *Id*. at 1123. "A case in which the district court has reason to believe that virtually all confidentiality designations will be spurious may provide such a case". *Id*.

With respect to Plaintiff's application to compel Defendants to answer certain interrogatories, the Court notes that FED. R. CIV. P. 26(b)(1) provides "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter" and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence". Notably, "[t]he party resisting discovery has the burden of clarifying and explaining its objections and to provide support therefor". *Tele-Radio Systems, Ltd. v. De Forest Electronics, Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981); *see also Gulf Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 916-17 (E.D. Pa. 1979); *Robinson v. Magovern*, 83 F.R.D. 79, 85 (E.D. Pa. 1979).

The Court also notes that pursuant to FED. R. CIV. P. 26(b)(2)(C), it "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii)   the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

14

>    (iii)    the burden or expense of the proposed discovery
>             outweighs its likely benefit, considering the needs of
>             the case, the amount in controversy, the parties'
>             resources, the importance of the issues at stake in the
>             action, and the importance of the discovery in resolving
>             the issues.

The precise boundaries of the Rule 26 relevance standard depend upon the context of each

particular action, and the determination of relevance is within the discretion of the District Court.

*See Barnes Found. v. Twp. of Lower Merion*, 1996 WL 653114, at *1 (E.D. Pa. 1996).

Importantly, "Courts have construed this rule liberally, creating a broad vista for discovery".

*Takacs v. Union County*, 2009 WL 3048471, at *1 (D.N.J. 2009)(*citing Tele-Radio Sys. Ltd. v.

DeForest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981)); *see also Oppenheimer Fund, Inc. v.

Sanders*, 437 U.S. 340, 351 (1978); *Evans v. Employee Benefit Plan*, 2006 WL 1644818, at *4

(D.N.J. 2006).  However, "a discovery request may be denied if, after assessing the needs of the

case, the amount in controversy, the parties' resources, the importance of the issues at stake in

the action, and the importance of the discovery in resolving the issues, the District Court finds

that there exists a likelihood that the resulting benefits would be outweighed by the burden or

expenses imposed as a consequence of the proposed discovery".  *Takacs*, 2009 WL 3048471, at

*1; *see also Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).  "The purpose of this

rule of proportionality is to guard against redundant or disproportionate discovery by giving the

court authority to reduce the amount of discovery that may be directed to matters that are

otherwise proper subjects of inquiry".  *Takacs*, 2009 WL 3048471, at *1 (*citing Bowers v.

National Collegiate Athletic Assoc.*, 2008 WL 1757929, at *4 (D.N.J. 2008)); *see also Leksi, Inc.

v. Federal Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989); *Public Service Group, Inc. v. Philadelphia*

*Elec. Co.*, 130 F.R.D. 543, 551 (D.N.J. 1990).

FED. R. CIV. P. 33 states:

(a) In General.
> (1) Number.  Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts.  Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2).
> (2) Scope.  An interrogatory may relate to any matter that may be inquired into under Rule 26(b).  An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

(b) Answers and Objections.
> ...
> (3) Answering Each Interrogatory.  Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.
>
> (4) Objections.  The grounds for objecting to an interrogatory must be stated with specificity.  Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.
> ...

(d) Option to Produce Business Records.  If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

"The more progressive approach to interrogatories dealing with legal matters is to view them in the factual context within which they arise". *Microtron Corp. v. Minnesota Mining & Mfg. Co.*, 269 F. Supp. 22, 25 (D.N.J. 1967); *see also Singer Manufacturing Co. v. Brother International Co.*, 191 F. Supp. 322 (S.D.N.Y. 1960). "If the answer might serve some legitimate purpose, either in leading to evidence or in narrowing the issues, and to require it would not unduly burden or prejudice the interrogated party, the court should require answer". *Id.*; *see also* 4 MOORE'S FEDERAL PRACTICE, 2d Ed. 2534; *Gagen v. Northam Warren Corp.*, 15 F.R.D. 44 (S.D.N.Y. 1953).

## IV.   CONCLUSIONS

### A.   Plaintiff's application to modify the Confidentiality Order

With respect to Plaintiff's application to modify the Discovery Confidentiality Order, initially the Court notes that this Order was negotiated and agreed to by the Parties and was entered on August 28, 2009. *See* dkt. entry no. 69. In pertinent part, the Confidentiality Order provides:

> 3.   DESIGNATING MATERIAL
> 3.1   The Producing Party may designate Discovery Material as 'Confidential' or 'Highly Confidential – Outside/Limited Counsel Only' as specified below. The Producing Party shall apply a confidentiality designation only when the Producing Party has a reasonable, good faith belief that the information so designated constitutes 'Confidential' or 'Highly Confidential – Outside/Limited Counsel Only' material.
> ...
> 8.   DESIGNATION BY NON-PARTIES
> Any non-party who is producing Discovery Material in this litigation may subscribe to and obtain the benefits of the terms and protections of this Order by designating Discovery Material that the non-party is producing as 'Confidential' or 'Highly

Confidential – Outside/Limited Counsel Only' pursuant to the terms of this Order.

9.    DISPUTES   CONCERNING   DESIGNATION   OF PROTECTED MATERIAL

 9.1 If, at any time, a Party wishes for any reason to dispute a designation of Discovery Material of 'Confidential' or 'Highly Confidential – Outside/Limited Counsel Only,' such Party shall notify the Producing Party of such dispute in writing, specifying by exact Bates numbers the Protected Material in dispute and the precise nature of the dispute with regard to each such document or other Discovery Material.  If the Parties are unable amicably to resolve the dispute, within (10) days of the parties having met and conferred, the Receiving Party shall present the dispute to the Court by telephone or letter in accordance with Local Civil Rule 37.1(a)(1) and any applicable Case Management Orders before filing a motion.

 9.2 Any discovery material designated as 'Confidential' or 'Highly Confidential – Outside/Limited Counsel Only' under this Order, whether or not such designation is in dispute, shall retain that designation and be treated as Protected Material in accordance with the terms hereof unless and until:

  (a) the Producing Party agrees in writing that the material is no longer Protected Material and subject to the terms of this Order; or

  (b) twenty (20) days after the expiration of the appeal period of the Order of this Court that the matter shall not be entitled to 'Confidential' or 'Highly Confidential – Outside/Limited Counsel Only' status (or such longer time as ordered by this Court) if the Order on appeal is not subject to a stay.

 ...

15.   MODIFICATIONS/CONTINUING EFFECT

 By written agreement of the Parties, or upon motion and order of the Court, the terms of this Discovery Confidentiality Order may be amended or modified.  This Discovery Confidentiality Order shall continue in force until amended or superseded by express order of the Court, and shall survive any final judgment or settlement in this litigation.  The Parties shall

18

take such reasonable measures as are necessary and appropriate to
prevent the disclosure of Protected Material, through inadvertence
or otherwise, after the conclusion of this action.

A Supplemental Discovery Confidentiality Order, agreed to by the Parties and Pfizer, Inc.

("Pfizer"), was filed on September 23, 2009 (*see* dkt. entry no. 73) and a Second Supplemental

Discovery Confidentiality Order, agreed to by the Parties and GlaxoSmithKline LLC ("GSK"),

was filed on May 19, 2011 (*see* dkt. entry no. 143).  These Supplemental Confidentiality Orders

provide that "the Discovery Confidentiality Order entered on August 27, 2009, including its

definitions, remains in effect and applies to Discovery Material produced by non-party Pfizer"

and "non-party GSK".  *See* dkt. entry nos. 73 & 143.

Here, the Court finds that notwithstanding the number of documents Defendants have

designated "Highly Confidential – Outside/Limited Counsel Only" (*see* Pl.'s Br. dated August

12, 2011 at 7-9), Plaintiff has failed to demonstrate good cause for modification of the

Confidentiality Order given the factors to be considered (*see Glenmede Trust*, 56 F.3d at 483; *see

also* Pansy, 23 F.3d at 787-91) particularly since Defendants, Pfizer, and GSK have all proceeded

in reliance on the existing Confidentiality Order (*see* Def's Opp'n Br. dated August 23, 2011 at

13-14).  The fact that Defendants have designated a significant percentage of their documents

"Highly Confidential – Outside/Limited Counsel Only" is, in and of itself, an insufficient basis to

warrant modification of the Confidentiality Order as the nature of the allegations in this case

necessarily requires the exchange of "proprietary and commercially sensitive information among

competitors".  *Id*. at 2.  Certainly the Parties were aware of the nature of the allegations prior to

negotiating and stipulating to the terms of the Confidentiality Order.  Under the circumtsances,

the Court finds that any modification at this time – after substantial amounts of discovery have

been designated and produced in reliance on the Confidentiality Order – would bring this matter to a virtual standstill and place significant additional burdens of time and expense on Defendants to review and re-designate previously produced discovery.  *Id*. at 15-16; *see also Glenmede Trust*, 56 F.3d at 483; *Pansy*, 23 F.3d at 787-91.  Given that a process exists for the timely resolution of any document designation dispute, the Court finds that Plaintiff has failed to demonstrate good cause with respect to the remainder of factors set forth in the balancing test.

*See Glenmede Trust*, 56 F.3d at 483; *see also Pansy*, 23 F.3d at 787-91.  Specifically,

> -a modification of the Confidentiality Order may result in the disclosure of discovery that Defendants have designated 'Highly Confidential – Outside/Limited Counsel Only' for improper purposes (*see* Def.'s Opp'n Br. date August 23, 2011 at 13-17);
>
> -a modification of the Confidentiality Order may result in disclosure of discovery that Defendants have designated 'Highly Confidential – Outside/Limited Counsel Only', thereby violating Defendants' privacy interests and causing embarrassment for Defendants (*Id*.);
>
> -the parties and third-parties benefitting from the Confidentiality Order are not public entities or officials; and
>
> -although the Court acknowledges Plaintiff's position that this matter involves issues that are important to the public health and safety, the Court notes that this "is a private action between private parties" such that "the public has an interest in documents filed with the Court" but not "discovery...[exchanged between the parties]" (*Id*.).

For these reasons, Plaintiff's application to modify the Confidentiality Order is denied.

Pursuant to FED. R. CIV. P. 53,

> (a) Appointment.
>> (1) Scope.  Unless a statute provides otherwise, a court may appoint a master only to:
>>> (A) perform duties consented to by the parties;
>>> (B) hold trial proceedings and make or recommend

> findings of fact on issues to be decided without a
> jury if appointment is warranted by:
>> (i) some exceptional condition; or
>> (ii) the need to perform an accounting or
>> resolve a difficult computation of damages;
>> or
> (C) address pretrial and posttrial matters that cannot
> be effectively and timely addressed by an available
> district judge or magistrate judge of the district.

In order to expedite the timely resolution of any existing or prospective disputes regarding the designation of discovery under the Confidentiality Order, the Court will appoint a Special Master.[1]  As set forth more fully below, the Special Master is directed to utilize the framework set forth in the Confidentiality Order to resolve any document designation disputes.

**B.**   **Plaintiff's application to compel Defendants to provide full and complete answers to Plaintiff's Interrogatories**

With respect to Plaintiff's application to compel Defendants to provide full and complete answers to Plaintiff's Fourth Set of Interrogatories, other than those comments set forth on the record on April 2, 2012, the Court makes no findings as to the sufficiency of Defendants' objections and/or responses.  Rather, in order to expedite the timely resolution of any existing or prospective disputes regarding the Parties' interrogatories and answers thereto, the Court will refer the pending application related to Plaintiff's Fourth Set of Interrogatories to the Special Master.

**V.**   **ORDER**

Having considered the papers submitted and the opposition thereto together, and for the reasons set forth on the record and above;

---

[1]  The appointment of a Special Master was previously discussed with counsel during the initial argument of these motions on December 1, 2011.

**IT IS** on this 16th day of April, 2012,

**ORDERED** that Plaintiff's application to modify the Confidentiality Order is **DENIED**; and it is further

**ORDERED** that Plaintiff's application to compel Defendants to provide full and complete answers to Plaintiff's Fourth Set of Interrogatories is **DENIED** without prejudice; and it is further

**ORDERED** that, with respect to any dispute between the Parties regarding confidentiality designations under the Discovery Confidentiality Order and with respect to Plaintiff's application to compel Defendants to provide full and complete answers to Plaintiff's Fourth Set of Interrogatories, the Court hereby appoints a Special Master pursuant to FED. R. CIV. P. 53; and it is further

**ORDERED** that the Court hereby notifies the Parties that it is considering the appointment of Hon. John J. Hughes, U.S.M.J. (ret.) to that role, subject to objection by the parties, who shall meet and confer and subsequently submit a joint letter to the Court by **April 16, 2012** stating any such objection; and it is further

**ORDERED** that the Parties shall review FED. R. CIV. P. 53(f)(3), meet and confer, and subsequently submit a joint letter to the Court by **April 16, 2012** indicating whether they will stipulate that the Special Master's factual findings will be reviewed for clear error or will be final; and it is further

**ORDERED** that the Special Master's rulings on all procedural matters will only be reviewed for an abuse of discretion pursuant to FED. R. CIV. P. 53(f)(5); and it is further

**ORDERED** that:

22

1.  Pursuant to FED. R. CIV. P. 53(b)(3), Hon. John J. Hughes, U.S.M.J. (ret.) shall file a declaration disclosing whether there is any ground for disqualification under 28 U.S.C. § 455 by **April 23, 2012**.  If a ground for disqualification is disclosed, the parties shall meet and confer and indicate whether they waive the disqualification in a joint letter submitted to the Court by **April 27, 2012**.

2.  The Special Master shall proceed with all reasonable diligence to analyze the positions taken, and the evidence presented, by each party with respect to the applications outlined above in accordance with the principles set forth in this Memorandum Opinion and Order.  The Special Master may review the briefs, declarations, and exhibits submitted together with these applications, in addition to any other materials including those that the Special Master permits/requests that the parties submit directly to him.  In performing these duties, the Special Master shall have all of the authority specified by FED. R. CIV. P. 53(c).

3.  The Special Master will be responsible for filing a Report and Recommendation setting forth his findings with respect to any dispute between the parties regarding confidentiality designations applied to documents produced in discovery, including the propriety of those designations.  If the Special Master finds that a confidential designation should be modified, the Special Master shall include his findings in this regard.  Given the volume of documents that may be at issue, and because disputes may be submitted to the Special Master on a rolling basis, the Special Master is directed to confer with the parties, and is authorized to confer with the Court *ex parte*, with respect to the contents and timing of this Report and Recommendation.

4.  The Special Master will be responsible for filing a Report and Recommendation setting forth his findings with respect to Plaintiff's application to compel Defendants to provide full and complete answers to Plaintiff's Fourth Set of Interrogatories, including the sufficiency of Defendant's individual responses.   If the Special Master finds that Defendant's answer to an interrogatory is insufficient, the Special Master shall include his findings in this regard.  The Special Master is directed to confer with the parties, and is authorized to confer with the Court *ex parte*, with respect to the contents and timing of this Report and Recommendation.

5.  The Special Master shall bill his time at his customary rate, specifying time allocated to individual disputes between the parties regarding confidentiality designations applied to documents produced in discovery and specifying time allocated to individual interrogatories and the

sufficiency of the answers thereto.

(a)     With respect to any dispute between the parties regarding confidentiality designations, if a confidentiality designation is upheld for a particular document(s), the party challenging the designation shall be responsible for the Special Master's fees related to that challenge.   Oppositely, if a confidentiality designation is modified for a particular document(s), the designating party shall be responsible for the Special Master's fees related to that challenge.

(b)     With respect to Plaintiff's application to compel Defendants to provide full and complete answers to Plaintiff's Fourth Set of Interrogatories, if Defendant's answer to a particular interrogatory is determined to be sufficient and no supplemental response is required, Plaintiff shall be responsible for the Special Master's fees related to that interrogatory.  Oppositely, if Defendant's answer to a particular interrogatory is determined to be insufficient and a supplemental response is required, Defendant shall be responsible for the Special Master's fees related to that interrogatory.;

and it is further

**ORDERED** that the Court will consider modifications to confidentiality designations applied to documents produced in discovery upon receiving the Special Master's Report and Recommendation; and it is further

**ORDERED** that the Court will consider the sufficiency of Defendants objections and/or responses to Plaintiff's Fourth Set of Interrogatories upon receiving the Special Master's Report and Recommendation.

s/ *Douglas E. Arpert* _____
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**

24